In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-2718

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRIAN E. GLADISH,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:06-CR-00109—**Robert L. Miller, Jr.**, *Chief Judge.*

———————

ARGUED APRIL 4, 2008—DECIDED JULY 31, 2008

———————

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

POSNER, *Circuit Judge.* A jury convicted the defendant of
having violated two federal statutes: 18 U.S.C. § 1470,
which prohibits knowingly transferring or attempting
to transfer obscene material to a person under 16, and
18 U.S.C. § 2422(b), which, so far as bears on this case,
forbids knowingly attempting to persuade, induce, entice,
or coerce a person under 18 to engage either in prostitu-
tion or in any sexual activity for which one could be
charged with a criminal offense. Section 1470 imposes a
maximum sentence of 10 years in prison; section 2422(b)
imposes a minimum sentence of 10 years and a maximum
of life. The judge sentenced the defendant to 10 years
for the violation of section 1470 and 13 years, rather than

the advisory guideline sentence of 10 years, for the violation of section 2422(b), the sentences to run concurrently. He went above the guidelines range because otherwise the punishment for the defendant's violation of section 1470 would be effectively zero, given the 10-year minimum sentence for the section 2422(b) violation and the fact that 10 years is the maximum sentence for violating section 1470. The defendant challenges only his conviction for violating section 2422(b).

The defendant, a 35-year-old man, was caught in a sting operation in which a government agent impersonated a 14-year-old girl in an Internet chat room called "Indiana regional romance." The defendant visited the chat room and solicited "Abagail" (as the agent called herself) to have sex with him. The defendant lived in southern Indiana; "Abagail" purported to live in the northern part of the state. She agreed to have sex with the defendant and in a subsequent chat he discussed the possibility of traveling to meet her in a couple of weeks, but no arrangements were made. He was then arrested.

The defendant of course did not succeed in getting "Abagail" to have sex with him, and if he had, he would not have been guilty of a completed violation of section 2422(b) because the agent who called herself "Abagail" was not a minor. The question (the only one we need answer to resolve the appeal) is whether the defendant is guilty of having *attempted* to get an underage girl to have sex with him. To be guilty of an attempt you must intend the completed crime and take a "substantial step" toward its completion. *Braxton v. United States*, 500 U.S. 344, 349 (1991); *United States v. Coté*, 504 F.3d 682, 687-88 (7th Cir. 2007). But the term "substantial step" cannot be applied to a concrete case without an understanding of

the purpose for punishing unsuccessful attempts to commit crimes.

In tort law, unsuccessful attempts do not give rise to liability. If you plan to shoot a person but at the last minute change your mind (and you had not threatened him, which might be actionable), you have not committed a tort. The criminal law, because it aims at taking dangerous people out of circulation before they do harm, takes a different approach. A person who demonstrates by his conduct that he has the intention and capability of committing a crime is punishable even if his plan was thwarted. The "substantial step" toward completion is the demonstration of dangerousness, and has been usefully described as "some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime." *United States v. Manley*, 632 F.2d 978, 988 (2d Cir. 1980); see, e.g., *United States v. Vigil*, 523 F.3d 1258, 1267-68 (10th Cir. 2008). You are not punished just for saying that you want or even intend to kill someone, because most such talk doesn't lead to action. You have to do something that makes it reasonably clear that had you not been interrupted or made a mistake—for example, the person you thought you were shooting was actually a clothier's manikin—you would have completed the crime. That something marks you as genuinely dangerous—a doer and not just one of the "hollow men" of T. S. Eliot's poem, incapacitated from action because

> Between the conception
> And the creation
> Between the emotion
> And the response
> Falls the Shadow.

In the usual prosecution based on a sting operation for attempting to have sex with an underage girl, the defendant after obtaining the pretend girl's consent goes to meet her and is arrested upon arrival, as in *United States v. Gagliardi*, 506 F.3d 140, 150 (2d Cir. 2007); *United States v. Coté, supra*, 504 F.3d at 688; *United States v. Spurlock*, 495 F.3d 1011, 1012-13 (8th Cir. 2007), and *United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006). It is always possible that had the intended victim been a real girl the defendant would have gotten cold feet at the last minute and not completed the crime even though he was in position to do so. But there is a sufficient likelihood that he would have completed it to allow a jury to deem the visit to meet the pretend girl a substantial step toward completion, and so the visit is conduct enough to make him guilty of an attempt and not merely an intent.

Travel is not a sine qua non of finding a substantial step in a section 2422(b) case. *Doe v. Smith*, 470 F.3d 331, 345 n. 23 (7th Cir. 2006). The substantial step can be making arrangements for meeting the girl, as by agreeing on a time and place for the meeting. *United States v. Yost*, 479 F.3d 815, 820 (11th Cir. 2007); *United States v. Thomas*, 410 F.3d 1235, 1246 (10th Cir. 2005); *United States v. Bailey*, 228 F.3d 637, 639-40 (6th Cir. 2000); cf. *United States v. Ramirez*, 348 F.3d 1175, 1180-81 (10th Cir. 2003). It can be taking other preparatory steps, such as making a hotel reservation, purchasing a gift, or buying a bus or train ticket, especially one that is nonrefundable. "[T]he defendant's initiation of sexual conversation, writing insistent messages, and attempting to make arrangements to meet" were described as a substantial step in *United States v. Goetzke*, 494 F.3d 1231, 1237 (9th Cir. 2007). "Child sexual

abuse is often effectuated following a period of 'grooming' and the sexualization of the relationship." Sana Loue, "Legal and Epidemiological Aspects of Child Maltreatment," 19 *J. Legal Med*. 471, 479 (1998); see *United States v. Brand*, 467 F.3d 179, 203 (2d Cir. 2006). We won't try to give an exhaustive list of the possibilities.

But we disagree with the government's suggestion that the line runs between "harmless banter" and a conversation in which the defendant unmistakably proposes sex. In all the cases cited to us by the government or found by our independent research there was more than the explicit sex talk that the government quotes from the defendant's chats with "Abagail." The *Goetzke* decision, from which we quoted, goes the furthest in the direction of the government's position, but is distinguishable. The court noted (494 F.3d at 1235, 1237; footnote omitted) that

> Goetzke made advances of a sexual nature—telling W that he was a "cute young man," suggesting an exchange of pictures, describing how he liked giving W a backrub and wanted to rub his "nice butt," advising W how to stimulate himself, and expressing the desire to see W naked and to "put your peter in my mouth." Redolent of the fun they had together riding horses, fishing, and being massaged, the letters were crafted to appeal to W, flatter him, impress him, and encourage him to come back to Montana "maybe this summer" when school was out, by promising the same kind of fun and a motorcycle of W's own. The letters essentially began to "groom" W for a sexual encounter in the event he returned to Montana. . . . Because of the allure of the recreational activities and the prospect of a motorcycle, the letters fit neatly within the common understanding

> of persuade, induce, or entice. . . . [Goetzke] sent W letters replete with compliments, efforts to impress, affectionate emotion, sexual advances, and dazzling incentives to return to Montana, and proposed that W return during the upcoming summer. In short, Goetzke made his move. Indeed, given their prior relationship and what Goetzke knew of W and their circumstances, the most substantial steps he realistically could take were to communicate his affections and carefully-crafted incentives to W by telephone and mail, which he did.

Because Goetzke and his intended victim had a prior relationship, his effort to lure the victim back to Montana for sex could not be thought idle chatter. But the fact that the defendant in the present case said to a stranger whom he thought a young girl things like "ill suck yoru titties" and "ill kiss yrou inner thighs" and "ill let ya suck me and learn about how to do that," while not "harmless banter," did not indicate that he would travel to northern Indiana to do these things to her in person; nor did he invite her to meet him in southern Indiana or elsewhere. His talk and his sending her a video of himself masturbating (the basis of his unchallenged conviction for violating 18 U.S.C. § 1470) are equally consistent with his having intended to obtain sexual satisfaction vicariously. There is no indication that he has ever had sex with an underage girl. Indeed, since she furnished no proof of her age, he could not have been sure and may indeed have doubted that she was a girl, or even a woman. He may have thought (this is common in Internet relationships) that they were both enacting a fantasy.

We are surprised that the government prosecuted him under section 2422(b). Treating speech (even obscene

speech) as the "substantial step" would abolish any requirement of a substantial step. It would imply that if *X* says to *Y*, "I'm planning to rob a bank," *X* has committed the crime of attempted bank robbery, even though *X* says such things often and never acts. The requirement of proving a substantial step serves to distinguish people who pose real threats from those who are all hot air; in the case of Gladish, hot air is all the record shows. So he is entitled to an acquittal on the section 2422(b) count, the effect of which will be to reduce his sentence from 13 years to 10 years.

We add, because it bears on our analysis of the attempt issue, that the district judge should not have prevented the psychologist whom the defendant had hired as an expert witness to testify with respect to the attempt. The expert's report states that the defendant seeks sexual gratification in Internet chat rooms and in watching pornographic films because he has a "character pathology" that has produced "a pervasive interpersonal apprehensiveness with the expectation that others will reject and disparage him." The defendant explained to the psychologist that he uses the Internet to gratify his sexual desires because "it's safer and less expensive—it's a cheap date and I don't have to worry about all the sexually transmitted diseases." The expert's report says that "such a response underscores the emotional and physical distance he prefers in his adult interpersonal relationships due to pronounced fear of ridicule and rejection." This was support for the "hot air" hypothesis of Gladish's conduct.

The judge's ground for barring the psychologist from testifying was that Rule 704(b) of the Federal Rules of Evidence forbids an expert to "state an opinion or infer-

ence as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone." But as the rule itself states, the expert is permitted to "testify . . . with respect to the mental state or condition" of the defendant. The psychologist could not have been permitted to testify that the defendant did not intend to have sex with "Abagail," but he could have testified that it was unlikely, given the defendant's psychology, that he would act on his intent. You can sincerely intend to stop smoking, yet a psychologist might conclude that you had such poor impulse control that it was exceedingly unlikely that you would stop. That evidence would not be barred by Rule 704(b). *United States v. Cohen*, 510 F.3d 1114, 1125-26 (9th Cir. 2007); *United States v. Finley*, 301 F.3d 1000, 1014-16 (9th Cir. 2002). In fairness to the district judge, we note that the defendant's lawyer did not make as clear as he should have what the intended focus of the expert's testimony would be. He said that the expert would testify that the defendant did not have a "real intent" to have sex with "Abagail." But it is reasonably clear that what the lawyer meant was that the expert would testify that the defendant was unlikely to have acted on his expressed intent.

The defendant's conviction of violating 18 U.S.C. § 2422(b) is reversed with instructions to acquit. The sentence for violating section 1470 will stand.