In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1012

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DONALD ZAWADA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:06-CR-00120(01)RM—**Robert L. Miller, Jr.**, *Chief Judge.*

ARGUED OCTOBER 15, 2008—DECIDED DECEMBER 18, 2008

Before EASTERBROOK, *Chief Judge,* and COFFEY and WOOD,
*Circuit Judges.*

WOOD, *Circuit Judge.* In this case, as in *United States v.
Davey,* No. 07-3533 (issued today), we must decide what
it takes to commit the offense of attempting to violate the
statute that prohibits knowingly persuading, inducing,
enticing, or coercing a minor to engage in criminal sexual
activity, see 18 U.S.C. § 2422(b). A jury found Donald
Zawada guilty of attempting to violate both § 2422(b) and

18 U.S.C. § 1470, which prohibits knowingly transferring obscene material to a person under the age of 16. There is ample evidence in the record to support the jury's verdict on the latter offense. Our review of the § 2422(b) conviction on this point is for plain error only, as we explain later. From that perspective, we have no trouble concluding that the steps Zawada took to bring about a forbidden sexual encounter with a minor were substantial enough to support the attempt conviction. We therefore affirm.

# I

Like Davey, Zawada's downfall came about through an Internet sting operation. In May 2006, someone using the name "plannerdude97" entered a Yahoo! chat room and made contact with "southbendkelsey13" (to whom we refer as "Kelsey" for simplicity). Kelsey purported to be a 13-year-old girl, but in reality "she" was Commander Mitchell Kajzer of the High Tech Crimes Unit of the St. Joseph County (Indiana) Prosecutor's Office. Over the next three months, Kelsey and "plannerdude97" had nine conversations using instant messaging; in addition, Kelsey had three more such conversations with "beckerb003." During "her" first conversation with "beckerb003," Kelsey learned that he was the same person as "plannerdude97." (We therefore refer to "plannerdude97" to include both screen names.)

At trial, Zawada did not dispute the fact that the online messages shared between "plannerdude97" and Kelsey were aimed at enticing Kelsey to engage in sexual activity.

Nor did he dispute that some of the images that "plannerdude97" sent to Kelsey, either directly or by use of a link, were obscene. Instead, he attempted to persuade the jury that he was not the person associated with those names. Zawada was 44 years old at the time of these events, living in Rolling Meadows, Illinois. At one point during the sting operation, a female officer posing as Kelsey placed a telephone call to a male believed to be "plannerdude97." The tape of that conversation indicates that the man identified himself as Tom or Daniel. The call lasted eight minutes, but it was not traced to a particular telephone or address. (Later, a trial witness who worked with Zawada identified him as the male speaker.) The police were able to trace the internet protocol address ("IP address") for the emails that "plannerdude97" sent to Kelsey on June 8, 2008. Cmdr. Kajzer learned that this IP address was registered to SBC Internet, an internet services provider. He then sent a subpoena to SBC Internet requesting all account information for the account associated with that IP address. SBC Internet's response led him to 2802 Flicker Lane, in Rolling Meadows. Cmdr. Kajzer also learned that one name associated with the Flicker Lane address was that of Donald Zawada.

The Government had additional evidence tying Zawada to "plannerdude97." On August 21, 2006, Cmdr. Kajzer and Special Agent Allen Tiffin of the United States Secret Service drove to 2802 Flicker Lane and established surveillance there. At approximately 6:40 p.m., a car pulled into the driveway; the driver was Diane Zawada, and the passenger was Donald. Diane Zawada gave the officers permission to look at the desktop computer located inside

the residence. That computer was connected to the Internet using a DSL service, and it was equipped with a router. The officers also took Donald Zawada's backpack, which he had with him in the car. They advised him of his constitutional rights, and after he waived those rights, he spoke briefly with the officers and allowed them to look into the backpack. There they found a laptop computer, a thumb drive, a network cable card, and a wireless network card.

A forensic examination of the laptop revealed that Yahoo! Messenger was installed on it, and that Messenger had last been accessed on August 21, 2006, the day of Zawada's arrest. In addition, located in the Yahoo! directory on the laptop were the screen names "plannerdude97" and "beckerb003." These were the only two screen names the investigators found. Stored on the computer was an excerpt of an August 17 online conversation between "beckerb003" and Kelsey and the Yahoo! member profile of "southbendkelsey13." Zawada had also taken the precaution of installing the program History Kill on his laptop. As the name suggests, this is a program that claims to be able securely to delete information from the computer by overwriting it in a way that makes the old data unrecoverable. Finally, Cmdr. Kajzer ran a trace route to determine where the nearest router for "plannerdude97" and "beckerb003" was located. He found one a short distance from the Flicker Lane home, northeast of Naperville, Illinois.

During the on-line conversations, Zawada asked Kelsey if she wanted to "make a date," and, if so, whether she

was using some kind of birth control measure. Kelsey said that she was interested and offered her telephone number. That was what prompted the call with the female officer. During that conversation, Zawada told Kelsey that he would visit her "one of these days, if not tomorrow." They discussed the need to work around both Zawada's work schedule and that of Kelsey's mother. They also chatted about what they would do once they were together. In the end, however, they never set a firm time and place for a meeting, and no meeting ever occurred. Zawada's arrest on August 21 brought an end to the ruse. Interestingly, Cmdr. Kajzer testified that August 21, 2006, was the last time he had a conversation with either "plannerdude97" or "beckerb003."

## II

We consider first Zawada's conviction under § 2422(b) for attempting to entice (etc.) a minor to engage in a criminal sexual act. As in *Davey*, *supra*, there are two critical questions: first, did Zawada preserve his right to complain that his actions were not substantial enough to amount to an attempt to commit the crime, and second, under the appropriate standard of review, does the record support a finding of the required substantial step. This court's recent decision in *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008), provides our starting point.

In *Gladish*, we held that mere talk in an Internet chat room is not enough to support a conviction for an attempt to violate § 2422(b). Instead, more concrete measures such as making arrangements for meeting the

(supposed) girl, agreeing on a time and place for a meeting, making a hotel reservation, purchasing a gift, or traveling to a rendezvous point, are necessary. See 536 F.3d at 649; see also *Davey*, No. 07-3533, [sl. op. at 9-10]. *Gladish* also recognizes that child sexual abuse is often effectuated through a period of "grooming" and sexualization of a relationship. 536 F.3d at 649. We reversed the conviction for an attempt to entice a minor into a sexual encounter with directions to acquit, because "hot air is all the record shows." *Id.* at 650.

In supplemental briefs filed after oral argument in this case, counsel for Zawada argues that Zawada did not forfeit his right to raise an argument based on *Gladish* largely because *Gladish* had not yet been decided at the time of trial and also because Zawada argued generally that the evidence was insufficient to support a conviction. He notes that the jury was instructed that it had to find a substantial step toward the commission of an act of enticement. But Zawada's insufficiency argument relied almost entirely on his theory that the Government could not prove that he was the wrongdoer. He did not focus on the substantial step element. The fact that *Gladish* had not been decided does not help him. If anything, the fact that there was an instruction on the "substantial step" issue demonstrates that the argument was available had counsel thought to make it. We conclude, on this record, that Zawada forfeited any argument that he might have made along the lines discussed in *Gladish.*

That means that we can consider this question only through the lens of plain error. Zawada must show (1) that

there was error, (2) that the error was plain (in the sense of obvious), (3) that the error affected his substantial rights, and (4) that, if the first three points are established, the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings. See *United States v. Olano,* 507 U.S. 725, 730-35 (1993). Although Zawada makes a valiant effort in his supplemental brief to convince us that his case meets these demanding criteria, we cannot agree with him.

Unlike Davey, Zawada never traveled to a pre-assigned rendezvous point in order to meet Kelsey. But, as we noted in *Gladish*, "[t]ravel is not a sine qua non of finding a substantial step in a section 2422(b) case." 536 F.3d at 649. Zawada and Kelsey had a relatively concrete conversation about making a "date," and they discussed a specific date and time of day that they thought would work. Zawada checked on the intimate detail of Kelsey's birth control practices, and he asked her whether he should bring some kind of protection with him. In the end, their plans never gelled, but this is somewhat closer to a substantial step than the "hot air" and nebulous comments about meeting "sometime" that took place in *Gladish.*

Even if we were to conclude that the evidence of Zawada's actions falls short of the standard described in *Gladish*, we cannot say that it is so wanting that it meets the second element of the plain error test. Nor can we say that a conviction resting on the evidence that was before the jury would amount to a manifest miscarriage of justice. The jury was properly charged on all elements

of the offense, including the need to find a substantial step toward completion of the offense, and it so found. Zawada talked with Kelsey many times, and the jury might have viewed those conversations as "grooming" efforts. We therefore find no plain error with respect to the substantial step requirement.

Zawada's primary argument, both before the district court and on appeal, has always been that the evidence was not sufficient to show that he was "plannerdude97" and "beckerb003." At this stage, however, we must view the evidence in the light most favorable to the jury's verdict. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). The account of the facts that we have already furnished is enough to show that the jury had ample evidence before it that permitted it to find that Zawada was the one chatting with Kelsey. Nothing more need be said.

Zawada also argues that the district court went beyond the boundaries established by FED. R. EVID. 403 when it permitted the Government to introduce the images that he sent to Kelsey and to publish to the jury the texts of the instant-message conversations. We see no abuse of discretion, however. The photographs were relevant to both the § 2422(b) charge and to the § 1470 charge. With respect to the former, they helped the Government to prove that Zawada was trying to entice Kelsey into engaging in unlawful sexual activity. With respect to the latter, the photographs helped to prove that Zawada was sending obscene matter to her. While these materials undoubtedly made a significant impression on the jury, they were not unfairly prejudicial. See *United States v.*

*Burt,* 495 F.3d 733, 740 (7th Cir. 2007) ("There is a difference between evidence that brings unfair prejudice and evidence that is damning.").

### III

Zawada offers no other reason to overturn his conviction under § 1470 other than the identification point that we have already rejected. We therefore AFFIRM the judgment of the district court.