In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1204

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MATTHEW HENSLEY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 06 CR 168—**Philip P. Simon**, *Judge.*

ARGUED APRIL 9, 2009—DECIDED JULY 23, 2009

Before MANION, ROVNER, and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Government agents created a fictitious online personality named "Jennifer Sanchez," who represented herself as a 13-year-old girl. Matthew Hensley, using multiple online personas, attempted to cajole Jennifer into having sex with him. A meeting place was arranged. However, while en route, Hensley noticed law enforcement near the meeting place and left the scene. Officers arrested Hensley the next day. A jury

convicted him of attempting to solicit a minor for sex in violation of 18 U.S.C. § 2422(b). The district court sentenced him to 125 months' imprisonment. Hensley appeals both his conviction and sentence. We affirm.

I.

The sting that caught Matthew Hensley was part of a wider law-enforcement effort targeting Internet sexual predators. The operation used personnel from several state and federal agencies, including the Immigration and Customs Enforcement ("ICE") and the Secret Service. The plan was to first entice sexual predators over the Internet using agents passing themselves off as minors, and then to nab them when they arrived at Will Park in Valparaiso, the spot where the fictitious minors would tell the perpetrators to meet them for the trysts. The take-downs—approximately ten to twelve of them—were all scheduled to occur on the same day, August 18, 2006, and involved well over 100 law enforcement officers.

ICE agents Demetrius Flowers and Melissa Chan participated in the operation. They posed as a thirteen-year-old girl named "Jennifer Sanchez" and created an online Yahoo profile for her with the screen name jen_indy_13 (hereinafter "Jen"). Beginning August 7, 2006, Agent Flowers, under the guise of that screen name, visited the Indiana section of several Yahoo chat rooms.

That same day, Hensley, using the screen name MattyMac99, struck up a one-on-one conversation with Jen in one of the chat rooms. Both parties revealed their

age, sex, and location. Upon discovering that Jen was thirteen years old, Hensley responded, "oh what the hell i'd still fuck you." Later, Hensley, informing Jen that he had sex on his mind, attempted to find out where she lived and what hours her mom worked. He also asked her what was the most she had ever done with a guy before, when she might want to have sex, if she would let him kiss her, what her number was, and when they could meet.

While Hensley was talking to Jen as MattyMac99, he also was conducting two other one-on-one conversations with her using the screen names MaverickMatt4 and Mark_Thompson24. With each screen name, Hensley was pretending to be a different person. At the time, the government did not know that all three screen names were the same person. As MaverickMatt4, Hensley pretended to be a 19-year-old male living an hour north of Indianapolis. He again requested that Jen give her age—she reaffirmed that she was thirteen—and then asked her pointed questions about her sex life, including whether a guy had ever "fe[lt] you up" and if she had ever masturbated.

As Mark_Thompson24, Hensley pretended to be a 21-year-old male living in downtown Indianapolis. Hensley told Jen he was "horny" and wanted "to get to know [her] with [her] clothes off." He also asked her if she would come hang out with him and "help [him] out" by performing various sex acts with him. Hensley later asked Jen for her bra size and fantasized about having sex with her.

Hensley continued conversing with Jen the next day. Using the screen name NIPSCO26, he posed as a fifteen-year-old girl and questioned Jen repeatedly about her age to make sure she was thirteen and not just "do[ing] some trapping work." He also used the screen name Mark_Thompson24 to encourage her further to have sex with him, going so far as to offer to pick her up that night. When Jen expressed fear about getting pregnant, Hensley told her that she would not get "preggers" if they had sex after her period or engaged in coitus interruptus.

The next evening, using the screen name MattyMac99, Hensley was at it again. He engaged Jen in another highly sexualized conversation and attempted to arrange a meeting with her. During their next conversation, Hensley continued to push for a meeting with Jen. He talked about the possibility of her becoming his girlfriend and attempted to devise a plan for her to meet him at Valparaiso University.

Although the meeting at Valparaiso University did not happen, Hensley kept pressing Jen to meet him. He also continued to groom Jen for a sexual encounter. On one occasion, Hensley, using the screen name NIPSCO26, contacted Jen and—again pretending to be a fifteen-year-old girl—told Jen how "she" loved having sex with older men because they were more experienced than younger guys. He also told Jen that thirteen was old enough to have sex and appealed to the lack of concern by "her" dad, a doctor, in order to show Jen that her fears of pregnancy and sexually transmitted diseases were overblown.

After a phone conversation on August 18, Hensley agreed to meet Jen near her house around 3:00 p.m. later that day. As the time for the rendezvous approached, a uniformed police officer stationed near the designated meeting place observed Hensley drive past his parked squad car. Hensley did not stop, and the officer made no attempt to arrest him. During a chat session that night, Jen asked Hensley why he had not stopped by that day. Hensley replied that there were cops everywhere, that he could be arrested for coming to see her, that she was too young for him, and that a guy his age hanging out with a girl her age would not look good.

Agents arrested Hensley at his home the next day. They also executed a search warrant, seizing a computer from Hensley's living area in the home's basement. Upon examining that computer, forensic experts discovered that the screen names Hensley used to contact Jen originated from it. They also found that someone had attempted to delete those screen names from the computer.

Hensley was charged in a one-count indictment with attempting to solicit a minor for sex in violation of 18 U.S.C. § 2422(b). At trial, the government introduced evidence of Hensley's prior online relationship with T.G., a minor from California. Prior to T.G.'s testimony, the district court gave the following instruction:

> The testimony that you're about to hear from this witness . . . will be evidence of acts that the Defendant may have committed other than those that are charged in the indictment. You should consider this evidence only on the issue of the Defendant's intent,

and you should consider this evidence only for this limited purpose and for no other purpose.

T.G. testified that she first met Hensley in an Internet chatroom when she was 12. After she conversed with him for awhile, Hensley moved to sexual topics, such as the first time T.G. "got sexual" and if she knew how to masturbate. Although T.G. initially told Hensley she was 14, she later divulged her true age on her thirteenth birthday. Despite knowing her real age, Hensley continued to talk with T.G. about sexual subjects. Later, after exchanging phone numbers, they began engaging in phone sex. T.G. also testified that, although Hensley never came to visit her, he had told her he was going to make preparations to fly out to see her.

The jury convicted Hensley, and the court proceeded to sentencing. Under the guidelines manual effective November 2006, Hensley's base offense level was 24. *See* U.S.S.G. § 2G1.3(a) (Nov. 2006). Although Hensley's sentencing hearing was originally scheduled for October 2007—when the November 2006 guidelines manual was in effect—it was postponed until January 2008 at the request of the government. At the January 2008 hearing, the district court calculated the advisory guidelines using the guidelines manual effective November 2007. That version contained Amendment 701, which raised Hensley's offense level under U.S.S.G. § 2G1.3 from 24 to 28, thereby increasing his sentencing range (after two two-level enhancements) from 78-97 months to 121-151 months. *See* U.S.S.G. § 2G1.3(a)(3) (Nov. 2007). The mandatory minimum sentence under

18 U.S.C. § 2422(b) was 120 months' imprisonment, and the district court sentenced Hensley to 125 months' imprisonment. Hensley appeals his conviction and sentence.

## II.

On appeal, Hensley first argues that the district court erred in admitting evidence of Hensley's online relationship with T.G. We review the evidentiary decisions of the district court for an abuse of discretion. *United States v. Prieto*, 549 F.3d 513, 523 (7th Cir. 2008). Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence is admissible, however, where offered for a purpose other than showing propensity, such as to establish intent, knowledge, lack of mistake, motive, or opportunity. Fed. R. Evid. 404(b); *United States v. Vargas*, 552 F.3d 550, 554 (7th Cir. 2008). According to this court's four-part test, a district court determining the admissibility of "other acts" evidence under Rule 404(b) as well as Rules 402[1] and 403[2] must consider whether:

---

[1] Federal Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible" and "[e]vidence which is not relevant is not admissible."

[2] Federal Rule of Evidence 403 states that relevant evidence nevertheless "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice.

*United States v. Diekhoff*, 535 F.3d 611, 617 (7th Cir. 2008) (quoting *United States v. Simpson*, 479 F.3d 492, 498 (7th Cir. 2007)).

Hensley concedes that the government established the second and third elements of the four-part test—the similarity and temporal proximity of Hensley's relationship with T.G. and the evidence sufficient to establish it. Those concessions are significant, as the other two elements are easily met.[3] Regarding the first, the district

---

[3] Notwithstanding his concession of similarity, Hensley argues that the acts are unrelated. This is so, says Hensley, because 18 U.S.C. § 2422(b) incorporates state law ("Whoever, using . . . any facility or means of interstate . . . commerce . . . knowingly persuades [a minor] to engage in . . . any sexual activity *for which any person can be charged with a criminal offense*"), and the state-law offenses underlying the charged § 2422(b) offense and what could have been charged under § 2422(b) for Hensley's online relationship with T.G. are not the same. According to Hensley, the conduct at issue at trial is punishable as child solicitation, Ind. Code § 35-42-4-6, whereas his online involve-

(continued...)

court found that the evidence was relevant to show both Hensley's intent and knowledge, and we agree. From the very outset of the trial, Hensley put his intent to solicit sex from a minor and his knowledge that Jen was a minor at issue. During opening argument, Hensley's attorney argued that he "had every reason to believe the person at the other end of this computer was not 13 years of age."[4] Throughout the trial, Hensley continued

---

[3] (...continued)

ment with T.G. only would have amounted to vicarious sexual gratification, Ind. Code § 35-42-4-5.

Even assuming Hensley had not conceded similarity (he did), we would nevertheless reject that argument. Our case law does not require such a narrow rendering of similarity. *See Vargas*, 552 F.3d at 555 ("We have repeatedly held in the context of Rule 404(b) that similarity is relevant only insofar as the acts are sufficiently alike to support an inference of criminal intent. . . . *The prior acts need not be duplicates of the one for which the defendant is now being tried.* This test is not unduly rigid, and the term 'similarity' has been loosely interpreted and applied." (internal citation and quotations omitted) (alteration in original)). The relevant similarity here is, as Hensley himself acknowledges in his brief, that in both instances he was attempting to persuade a minor to engage in sexual activity.

[4] Hensley's attorney came perilously close to opening the door to the T.G. evidence under Fed. R. Evid. 404(a)(1) when he appeared to advance an entrapment defense, claiming during opening statements that "Hensley ha[d] no history as a predator of any kind whatsoever" and asking government witnesses questions about Hensley's predisposition to commit the

(continued...)

to advance his argument that he did not believe Jen was underage. While cross-examining the government's witnesses, Hensley's attorney attempted to leave the jury with the impression that he would not have interacted with Jen had he really believed she was 13. And, at closing, he similarly contended that Hensley had "every reason to believe" that Jen was 18. The evidence about T.G., of course, was highly relevant to showing the opposite; it demonstrated that Hensley had no qualms about pursuing a sexual relationship with a person he knew was a minor.

The relevance of the T.G. evidence to rebut Hensley's defense of lack of knowledge also strongly supports weighing the fourth factor, the balancing of the probative value with unfair prejudice, in favor of admissibility. While the evidence was prejudicial, it was not unfairly so. Furthermore, the district court's limiting instruction, given prior to T.G.'s testimony, provided a bulwark against any unfair prejudice. *See United States v. Hearn*, 534 F.3d 706, 713 (7th Cir. 2008) (noting that "such limiting instructions are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence") (internal quotation marks omitted). We therefore see no abuse of discretion

---

[4] (...continued)

offense. However, Hensley wisely withdrew reliance on that defense later during trial, and the government does not advance any argument for the admissibility of the T.G. evidence under Rule 404(a)(1).

in the district court's decision to admit the evidence of Hensley's prior relationship with T.G.

Moreover, even without the evidence concerning Hensley's relationship with T.G., a reasonable jury easily could have found that Hensley was guilty of attempting to persuade Jen to engage in sexual activity with him in violation of § 2422(b). *See Vargas*, 552 F.3d at 558. The government presented evidence that Hensley had numerous online and phone conversations with Jen—during which Jen made it crystal clear that she was underage—about meeting for sex. It also presented evidence that Hensley arranged a meeting place and time and traveled to the meeting place; that Hensley left the area after seeing law enforcement officers nearby and attempted to destroy the evidence on his computer of his chats with Jen; and that Hensley, in his final online conversation with Jen, admitted that he could be arrested for coming to see her, that she was too young for him, and that he did not stop to see her because there were "cops everywhere." Thus, had any unfair prejudice resulted from the evidence of Hensley's relationship with T.G., it would not merit reversal because the other evidence of Hensley's guilt was overwhelming. *See* Fed. R. Crim. P. 52(a).

Hensley next contends that the government failed to present sufficient evidence to show that he took a "substantial step" towards the completion of the § 2422(b) offense, as is necessary for an attempt conviction. *United States v. Coté*, 504 F.3d 682, 687 (7th Cir. 2007). Ordinarily, our review of a challenge to the sufficiency

of the evidence is quite deferential, looking only at whether "evidence exists from which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hach*, 162 F.3d 937, 942 (7th Cir. 1998). That standard, by itself, presents "a nearly insurmountable hurdle to the defendant." *Id*. (quoting *United States v. Teague*, 956 F.2d 1427, 1433 (7th Cir. 1992)). Hensley's trouble is compounded, however, because he did not raise this issue in his motion for judgment of acquittal in the district court. Hence, under the plain error standard, he faces the even more difficult task of showing that a "manifest miscarriage of justice will occur if his conviction is not reversed." *United States v. Irby*, 558 F.3d 651, 653 (7th Cir. 2009). "Put another way, reversal is warranted only if the record is devoid of evidence pointing to guilt, or if the evidence on a key element was so tenuous that a conviction would be shocking." *Id*. (internal quotations omitted).

Hensley falls far short of meeting that standard. He relies almost exclusively on *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008). In that case, this court held that sex talk alone does not amount to a "substantial step." 536 F.3d at 650. But there is much more than mere talk here. Not only did Hensley "groom" Jen for sex by conversing with her using multiple online personas, *see United States v. Zawada*, 552 F.3d 531, 535 (7th Cir. 2008); *United States v. Brand*, 467 F.3d 179, 203 (2d Cir. 2006), and arrange a meeting place and time to meet her, *Gladish*, 536 F.3d at 649 (citing cases), he *actually traveled* to the meeting place, being deterred from the encounter

only by the presence of law enforcement. As we stated in *Gladish*, that is more than enough for a jury to find a "substantial step." *See id.*

Hensley makes much of his last phone call to Jen before he traveled to meet her, during which he told her he was not sure sex was a good idea and asked if it was alright if they just hung out together. Hensley claims this shows he did not intend to meet her for sex. However, a jury was entitled from the evidence to conclude that Hensley's intent was otherwise—that he wanted sex, and not just to "hang out." Even a cursory reading of the transcripts of the conversations between Hensley and Jen reveals that Hensley had sex on his mind and was interested in much more than a platonic relationship with Jen. Indeed, Hensley went so far as to use one of his multiple personas (as a 15-year-old girl) to test Jen in order to make sure she was not a government agent. That Hensley took such precautions strongly suggests a desire for sex rather than simple friendship. Furthermore, the jury heard other evidence showing Hensley's consciousness of guilt: Hensley's attempted destruction of the incriminating chat profiles after he noticed police near the prearranged meeting place, as well as Hensley's last conversation with Jen wherein he told her there "were cops everywhere" and he could be arrested for coming to see her. From that evidence, a reasonable jury could find that Hensley intended to have sex with Jen when he went to meet her. Thus, Hensley has failed to show that upholding his conviction will result in a manifest miscarriage of justice.

Lastly, Hensley challenges the district court's calcula-
tion of his advisory guidelines range using the November
2007 guidelines manual, instead of the November 2006
version. We have previously rejected such a challenge in
*United States v. Demaree*, 459 F.3d 791 (7th Cir. 2006),
wherein we held that a district court can apply a change
in the Guidelines that expands a defendant's advisory
guidelines range without offending the Ex Post Facto
Clause. Hensley acknowledges *Demaree* but argues that
an exception should be made to its rule in this case. Such
an exception is warranted, Hensley contends, because
here the *government*, and not Hensley, asked for the
continuance of the sentencing hearing that led to the
application of the more stringent advisory guidelines.

We fail to see how that fact is significant. As we re-
marked in *Demaree*,

> A judge who said he was persuaded by the insight
> that informed the new guideline to give a sentence
> within the range established by it could not be thought
> to be acting unreasonably. . . . [W]henever a law or
> regulation is advisory, the judge can always say not
> that he based his sentence on it but that he took the
> advice implicit in it. A judge is certainly entitled to
> take advice from the Sentencing Commission.

*Id.* at 795. The same holds true here. Regardless of who
sought the continuance,[5] the district judge was entitled to

---

[5] Hensley does not argue that the government intentionally
delayed the sentencing so the amendment would take effect.
There is no reason for the government to do such a thing, since

(continued...)

take into account the change in the Guidelines when fashioning a sentence. No error was committed therefore in the calculation of Hensley's advisory guidelines range. Because Hensley makes no further challenge to his sentence, we will not disturb it.

## III.

The district court did not abuse its discretion in admitting evidence of Hensley's prior relationship with T.G. as probative of Hensley's knowledge that Jen was a minor and his intent to solicit sex from her. The court's limiting instruction adequately prevented any unfair prejudice stemming from that decision and, at any rate, the other evidence against Hensley was overwhelming and more than sufficient to support the jury's finding that Hensley attempted to solicit a minor for sex in violation of 18 U.S.C. § 2422(b). Hensley's final argument—that the district court erred in calculating his advisory guidelines range because it used the November 2007 guidelines manual instead of the guidelines manual effective November 2006—is foreclosed by our decision in *Demaree*. We therefore AFFIRM Hensley's conviction and sentence.

---

[5] (...continued)
under the logic of *Demaree*, the government can bring guideline changes to the attention of the district court before they take effect. *See id*.

---

7-23-09