In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3654

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEFFREY DEAN CHAMBERS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 3:08-cr-30057-JES-BGC-1—**Jeanne E. Scott**, *Judge.*

ARGUED JANUARY 14, 2011—DECIDED JUNE 16, 2011

Before BAUER, WOOD and HAMILTON, *Circuit Judges.*

BAUER, *Circuit Judge.* A jury convicted defendant-appellant Jeffrey Dean Chambers of attempting to entice a minor under the age of eighteen to engage in sexual activity in violation of 18 U.S.C. § 2422(b) and of knowingly transporting child pornography in interstate commerce in violation of 18 U.S.C. § 2252A(a)(1). The district court sentenced Chambers to 240 months' imprisonment. Chambers challenges the sufficiency of the

evidence used to prove the attempted enticement charge and the admission of certain evidence under Federal Rule of Evidence 404(b). For the following reasons, we affirm Chambers' convictions.

## I. BACKGROUND

In March 2006, Chambers entered an American Online ("AOL") chat room entitled "I Love Much Older Men," and using the screen name "jefdean60," initiated contact with the screen name "Riverprincess." The online profile for "Riverprincess" revealed that the user was a 14-year-old girl named Kendal; in actuality the girl was an undercover police detective named Carrie Smithberger. Over a span of fourteen months, Chambers contacted Kendal hundreds of times, engaging in sexually explicit online chats, e-mails, text messages, and telephone conversations.

While partaking in the online relationship with Kendal, Chambers continued to initiate contact with other young users of the "I Love Much Older Men" chat room. On May 21, 2006, Federal Bureau of Investigation Special Agent Jonathon Cook, under the guise of a 13-year-old girl named Jen with the screen name "Jensluv2cheer," entered into the same AOL chat room, and Chambers initiated a conversation. During this single conversation, Chambers inquired about Jen's appearance and sexual development, spoke in sexually suggestive language, sent Jen a sexually explicit image of what he claimed was himself, and told Jen he was masturbating and asked her to do the same "to make the experience better for him."

Approximately one year later in March 2007, Chambers, again using the screen name jefdean60, initiated contact with "Kaitlynm13" in the AOL chat room "I Love Much Older Men." The user of this screen name was actually Federal Bureau of Investigation Special Agent Wade Luders, posing as a 13-year-old female named Kaitlyn. During the chat with Kaitlyn, Chambers used sexually explicit language and e-mailed Kaitlyn pornographic pictures of both adults and children as well as videos of minors being sexually abused and engaging in sexual acts. Chambers then asked Kaitlyn if she would perform sexual acts and send him pictures.

On June 13, 2007, federal agents obtained a search warrant to search Chambers' residence and seized Chambers' computer and other evidence linking Chambers to Kendal. During the execution of the search warrant, Chambers consented to an interview by an agent at his home. Chambers admitted that he frequented AOL chat rooms and was interested in chatting with young females. He admitted that he had engaged in sexual conversations with "Riverprincess" and other minors, and that he sent her and other minors pornographic images. He said that he discussed meeting the minors to have sex but never actually intended to do so.

Chambers was charged with two counts of knowingly transporting child pornography in interstate commerce in violation of 18 U.S.C. § 2252A(a)(1) for sending child pornography to Detective Smithberger, under the alias Kendal, and to Special Agent Luders, under the alias Kaitlyn.

When plea negotiations failed to resolve the issues, the government filed a superceding indictment adding a count charging enticement of a minor in violation of 18 U.S.C. § 2422(b) for Chambers' contact with Detective Smithberger, under the alias Kendal.

Chambers was tried by a jury. The district court, over Chambers' objections, admitted several pieces of evidence under Federal Rule of Evidence 404(b), each of which was offered primarily to prove "grooming," motive, and intent. First, the court allowed into evidence Chambers' Internet chat and e-mails with Special Agent Luders, under the alias Kaitlyn. Specifically, the government introduced evidence that Chambers sent pornography to Kaitlyn and that he chatted with Kaitlyn about graphic sexual topics and a previous sexual encounter with his ex-girlfriend's 14-year-old daughter. Second, the court admitted into evidence Chambers' Internet chat with Special Agent Cook, under the alias Jen. The government offered a one-and-a-half-hour-long chat log between Chambers and Jen which was filled with sexually graphic language. In that conversation, Chambers described how he had sexual intercourse with the 14-year-old daughter of an ex-girlfriend and inquired into having sexual intercourse with Jen. Finally, the court admitted twenty-two child pornography images found on Chambers' computer, most of which were not related to the charges. The images were entered by the government to establish Chambers' ability to transfer pornographic images to the undercover agents, as well as to demonstrate Chambers' sexual feelings toward children.

A jury found Chambers guilty on all three counts. Chambers now appeals his convictions.

## II. DISCUSSION

### A. Evidence of Attempted Enticement of a Minor

Chambers argues that the government produced insufficient evidence to prove the attempted enticement charge. We give a jury verdict great deference and will uphold the verdict if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Hicks*, 368 F.3d 801, 804-05 (7th Cir. 2004).

Chambers filed a Rule 29 motion for a judgment of acquittal and a Rule 33 motion for a new trial pursuant to the Federal Rules of Criminal Procedure, which were both denied by the court. We review a Rule 29 motion de novo, accepting the factual findings in the light most favorable to the government. *United States v. Jones*, 222 F.3d 349, 351 (7th Cir. 2000). When evaluating a Rule 33 motion for a new trial, our task is to determine whether the verdict is so contrary to the weight of evidence that a new trial is required in the interests of justice. *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999).

The jury convicted Chambers under 18 U.S.C. § 2422(b), which makes it a crime to use interstate commerce to attempt or to knowingly persuade, induce, entice, or coerce any individual under the age of eighteen to engage in prostitution or any sexual activity for which

any individual can be charged with a criminal offense. 18 U.S.C. § 2422(b) (2006). To prove the attempt of this crime, the prosecution must show that Chambers intended to complete the crime and had taken a "substantial step" toward its completion. *United States v. Gladish*, 536 F.3d 646, 648 (7th Cir. 2008). The term "substantial step" can be an elusive concept, but has been described as more than mere preparation, but less than the last act necessary before actual commission of the crime. *United States v. Rovetuso*, 768 F.2d 809, 821 (7th Cir. 1985). A substantial step occurs when a person's actions make it reasonably clear that had he not been interrupted or made a mistake, he would have completed the crime. *Gladish*, 536 F.3d at 648.

Chambers argues that he neither intended to meet Kendal nor took a substantial step toward meeting Kendal. Chambers' argument that evidence of intent is lacking is unconvincing. He argues that his failure to meet Kendal after fourteen months of chatting online indicates that there was no intent to actually meet her, and that no reasonable jury could conclude beyond a reasonable doubt that his actions were more than just "a bunch of talk." Chambers also emphasizes the testimony of FBI Agent Christopher Lamb—one of the agents who interviewed Chambers upon his arrest—who testified that Chambers said he never intended to meet any minors in person. Nevertheless, the jury was entitled to conclude from the evidence that Chambers' intent was to meet Kendal for sex and not just talk about it. The jury did not have to believe Chambers when he said he had no intention to meet Kendal and the jury was instructed

as much. A reasonable jury could have found intent based on the evidence presented by the government.

Chambers next argues that because he did not travel to meet Kendal, there was no substantial step. While it is true that Chambers never traveled to meet Kendal, "travel is not a sine qua non of finding a substantial step." *United States v. Zawada*, 552 F.3d 531, 535 (7th Cir. 2008) (conviction for enticement upheld when the defendant and purported minor never met, but the two had a concrete conversation about where and when they would meet and the defendant ensured the purported minor was taking birth control); *Gladish*, 536 F.3d at 649 (citing *Doe v. Smith*, 470 F.3d 331, 345 n. 23 (7th Cir. 2006)). The Third, Sixth, Ninth, and Tenth Circuits have all found that "when a defendant initiates conversation with a minor, describes the sexual acts that he would like to perform on the minor, and proposes a rendezvous to perform those acts, he has crossed the line toward persuading, inducing, enticing, or coercing a minor to engage in unlawful sexual activity." *United States v. Goetzke*, 494 F.3d 1231, 1237 (9th Cir. 2007).[1]

---

[1] *Goetzke* cited the following cases in support of this proposition: *United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006) (concluding that instant messages arranging a meeting with a purported minor and appearing at the meeting place provided sufficient evidence of a substantial step toward persuading or inducing a minor); *United States v. Thomas*, 410 F.3d 1235, 1245-46 (10th Cir. 2005) (holding that the defendant's initiation of sexual online chats with the

(continued...)

We recognize that child sexual abuse can be accomplished by several means and is often carried out through a period of grooming. *United States v. Berg*, No. 09-2498, 2011 WL 1238309, at *13 (7th Cir. Apr. 5, 2011) ("[Section 2422(b)] targets the sexual grooming of minors as well as the actual sexual exploitation of them. The statute's focus is on the intended effect on the minor rather than the defendant's intent to engage in sexual activity."); *United States v. Hensley*, 574 F.3d 384, 391 (7th Cir. 2009); *Gladish*, 536 F.3d at 649. Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity. *Doe v. Liberatore*, 478 F.Supp.2d 742, 749-50 (M.D. Pa. 2007); Sana Loue, "Legal and Epidemiological Aspects of Child Maltreatment," 19 J. Legal Med. 471, 479 (1998).

Here, there is significant evidence that Chambers was grooming Kendal. He used many common grooming methods during his communications with Kendal; he spoke to her in sexually explicit terms, e-mailed her adult and child pornography, discussed sexual activities with her and instructed her on how to arouse herself,

---

[1] (...continued)

purported minor and attempting to make arrangements to meet were a substantial step); *United States v. Bailey*, 228 F.3d 637, 639-40 (6th Cir. 2000) (holding that the defendant's attempts to schedule meetings with minors constituted a substantial step).

told her that he had sexual intercourse for years with his ex-girlfriend's 14-year-old daughter, and otherwise attempted to prepare her for a sexual encounter with him by discussing in graphic detail how the act would occur. In addition to grooming Kendal, Chambers took other preparatory actions to establish his intent and a substantial step toward the completion of the crime. Chambers and Kendal repeatedly discussed specific plans to meet, including several exact meeting points, and discussed in detail how Kendal would sneak out of her house. Chambers obtained her home address, examined maps of her neighborhood, and inquired about motels within walking distance of her home. He also invited Kendal to travel at his expense to meet him where he lived in Illinois because he was concerned about driving after a recent DUI conviction. He formulated a plan to meet Kendal on an Amtrak train in or near Kendal's hometown in Ohio so that he could have sex with her on the train. Chambers further prepared for his encounter with Kendal by confirming that Kendal was taking birth control and by purchasing Viagra for his own use during the encounter. Furthermore, Chambers evidenced concern that Kendal was a police officer and repeatedly inquired about nude pictures of her. When Kendal responded that she had no means to send him pictures, Chambers obtained a web camera to mail to her. While the plans to meet never culminated in a meeting, it was more a substantial step than "a bunch of talk."

While speech alone is not enough to establish a "substantial step," *Gladish*, 536 F.3d at 650, here, a reasonable jury could conclude that Chambers' actions amounted

to more than mere "hot air" or "a bunch of talk." The jury's verdict was not so contrary to the weight of evidence that a new trial is warranted, and we affirm the denial of Chambers' Rule 33 and Rule 29 motions.

## B. Rule 404(b) Evidence

Chambers' second challenge is to the admission of certain evidence under Federal Rule of Evidence 404(b).

The district court, over Chambers' objections, admitted evidence under Rule 404(b) of Chambers' Internet chats with Special Agent Luders, Internet chats with Special Agent Cook, and images of child pornography found on Chambers' computer.[2] A trial court's evidentiary rulings will not be reversed on appeal absent a showing of abuse of discretion. *United States v. Harris*, 761 F.2d 394, 398 (7th Cir. 1985).

As a general matter, all relevant evidence is admissible. Fed. R. Evid. 402. However, Federal Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is inadmissible to prove a defendant's propensity to commit the charged crime. Fed. R. Evid. 404(b). This type of evidence may be admissible for other purposes though, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or ab-

---

[2] In a pre-trial hearing regarding the admissibility of this proposed Rule 404(b) evidence, the district court judge believed that the pornographic images and the chats were actually part of the res gestae of the case, but nonetheless completed a Rule 404(b) analysis.

sence of mistake or accident." Fed. R. Evid. 404(b). But, Federal Rule of Evidence 403 provides for the exclusion of relevant evidence that is unfairly prejudicial to the defendant. Fed. R. Evid. 403. "Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Zahursky*, 580 F.3d 515, 525 (7th Cir. 2009) (citing *United States v. Harris*, 536 F.3d 798, 809 (7th Cir. 2008)).

Courts employ a four-part test to determine whether evidence of prior acts is admissible under Rule 404(b) and will find that evidence was properly admitted if: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *United States v. Asher*, 178 F.3d 486, 492 (7th Cir. 1999).

Chambers challenges the first and fourth factors of this analysis, arguing that the evidence was probative only on his propensity to entice minors and that the evidence should not have been admissible because any probative value of the evidence was substantially outweighed by unfair prejudice. He then maintains that the district court did not give a cautionary limiting instruction to cure any prejudice.

First, Chambers objects to the admission of his chat with Special Agent Luders, posing as Kaitlyn, arguing that the evidence was not probative because he was not charged with attempted enticement of Kaitlyn. This is true, but the statements in this chat are highly probative on the child pornography transportation charge. Chambers sent Kaitlyn images and video of adult and child pornography, and this conversation was properly admitted to prove intent and absence of mistake.

Next, Chambers objects to the admission of his chat with Special Agent Cook, under the name Jen, arguing that the chat demonstrates nothing more than Chambers' propensity to entice minors. In this chat, along with the chats with Special Agent Luders and Detective Smithberger, Chambers spoke in sexually explicit language and boasted about having sex with his ex-girl-friend's 14-year-old daughter multiple times over the course of two years. The government argues that the first prong is satisfied because the information regarding a possible prior sexual act with a minor, as well as the sexually explicit nature of the chat, is admissible to show motive and intent. We agree. "Prior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children*." United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006) (citing *United States v. Cunningham*, 103 F.3d 553, 556 (7th Cir. 1996)); *see Zahursky*, 580 F.3d at 524.

Finally, Chambers argues that the district court abused its discretion in admitting twenty-two images of child

pornography on Chambers' computer. Only one of those images pertained to his charges, specifically Count III involving transporting child pornography to Special Agent Luders. The extensive supply of pornographic images of children on Chambers' computer makes that evidence probative as to Chambers' motive and intent. It demonstrates Chambers' ability to transport child pornography to Detective Smithberger and Special Agent Luders, as well as his sexual inclination towards children.

"That evidence may be highly prejudicial does not compel its exclusion; the evidence must be *unfairly* prejudicial." *Zahursky*, 580 F.3d at 525. While Chambers is correct that evidence of child pornography and sexual chats with young girls may be prejudicial, we agree with the district court that it was not unfairly prejudicial toward him.

Chambers relies on *United States v. Ciesiolka* in arguing unfair prejudice, a case in which we reversed the district court's admission of Rule 404(b) evidence. *United States v. Ciesiolka*, 614 F.3d 347, 358 (7th Cir. 2010). However, the *Ciesiolka* court never reached the issue of whether the evidence was unfairly prejudicial because the court felt compelled to reverse and remand the case based on the district court's failure to explain its reasoning for admitting the evidence and give a proper limiting instruction. Here, the district court did explain its reasoning in more than a "bare-bones conclusion," and the evidence was much less voluminous and took up a much smaller portion of the trial than in *Ciesiolka*. The *Ciesiolka* opinion does not provide support for Chambers' case. Furthermore, the record makes clear that the district court

judge provided a limiting instruction to the jury regarding the evidence entered under Rule 404(b). "Absent any showing that the jury could not follow the court's limiting instruction, we presume that the jury limited its consideration of the testimony in accordance with the court's instruction." *Zahursky*, 580 F.3d at 525-26 (quoting *United States v. Lee*, 558 F.3d 638, 649 (7th Cir. 2009)). Chambers has not attempted to show that the jury could not follow the court's limiting instruction. Therefore, we assume that the instruction removed any unfair prejudice. *See id.* (citing *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008)).

Chambers asserts that this evidence was "sure to disgust the jury toward Chambers." Sexual abuse of a child or the attempt thereof is a disgusting crime and any evidence of it is no doubt unfavorable to the defendant, but here it was not unfairly prejudicial. We find no abuse of discretion by the district court in admitting the challenged evidence.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Chambers' convictions.