NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 10, 2022*
Decided June 13, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 21-2676

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 20-CR-10030-001 |
| JAMES WRIGHT, *Defendant-Appellant.* | James E. Shadid, *Judge.* |

**O R D E R**

After a bench trial, a district judge convicted James Wright of sex offenses involving a minor. Wright appeals, challenging the sufficiency of the evidence of

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

attempted trafficking. Because ample evidence showed that Wright intended to pay for sex with a minor and took a substantial step towards doing so, we affirm.

In June 2020, Wright responded to a posting on Craigslist.org by a grandmother purportedly caring for granddaughters, who invited anyone "a little bit $ick" to contact her. Unbeknownst to Wright, the poster, who called herself "Baily," was an FBI agent. Baily told Wright via email that she was "selling experiences" with her 15- and 10-year-old granddaughters and, at Wright's request, sent him a picture of the 15-year-old (actually a 28-year-old confidential human source). (Wright also solicited sex from Baily, who declined.) After a three-week break in communication, Wright emailed to ask if others had purchased sex with the girls and if he could speak to her "not over the internet."

After a few days of phone calls and text messages, Wright and Baily agreed that Wright would pay $100 to receive oral sex from the 15-year-old. Wright, an auto mechanic, suggested meeting at his shop, and they set a date and time. On that day, Wright told Baily that he felt "reluctant" and asked for proof that she was "NOT the police." Baily sent a series of more revealing photos to reassure him. Wright agreed to continue and sent Baily a photograph of a $100 bill to show he had the agreed amount.

At the agreed meeting time, Baily sent Wright a text message informing him that the girl was in a minivan parked near Wright's shop. As Wright approached the minivan, federal agents stopped him and arrested him on a criminal complaint. He had a $100 bill in his pocket, and its serial number matched the one on the bill Wright had displayed earlier. Wright agreed to answer questions in a recorded post-arrest interview. Two weeks later, a grand jury filed a two-count indictment. Count One charged attempted trafficking of a minor, 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), 1594, and Count Two charged committing a felony offense involving a minor while required to register as a sex offender, *id.* § 2260A.

The prosecution proceeded to a one-day bench trial. The parties stipulated that Wright was required to register as a sex offender at the time he set the meeting with the girl. The government introduced into evidence records of all communications between Wright and Baily. This included a recording and transcript of a phone call in which Wright asked about the price of oral sex from the 15-year-old ("All right, um, how much for a blowjob?"), discussed what time he would meet the girl for the encounter ("Say about 3? Will that work?"), how much time he expected it to take ("[I'd] hate to get a [hotel] room for 15 minutes"), and provided an address for the meeting.

The government also introduced the text messages in which Wright expressed fear that Baily was with law enforcement and asked for something to "ease [his] mind." When Baily offered to send a picture of the girl in her bra, Wright responded, "you can do better than that." When he then received a picture of the girl covering her bare breasts, he responded that Baily was "getting closer." After receiving these photos and sending one of the $100 bill, Wright confirmed the price for oral sex and again asked Baily to confirm she was "NOT affiliated with ANY law enforcement agencies."

The government also introduced a recording and transcript of Wright's post-arrest statements. Here, Wright admitted that he knew he was meeting a 15-year-old. But he denied that he intended to pay for oral sex with her, explaining that he just wanted to talk and had asked for explicit photographs to decide whether to report Baily to law enforcement. He said that he had been discussing automotive repairs with Baily and that a "bj" referred to a "brake job." But when confronted with a recording of the phone call in which he expressly agreed to pay $100 for "a blow job," Wright proclaimed: "Oh shit, I'm going back to prison."

At the close of the government's case-in-chief, Wright moved for a judgment of acquittal based on insufficient evidence. Defense counsel emphasized Wright's post-arrest statements, in which he denied intending to receive oral sex and explained that he approached the van out of curiosity. Although counsel acknowledged that Wright's statements about a "brake job" were a "bad lie," he referred to Wright's fear that the agents would not believe that he was not looking for sex. Counsel also emphasized that, because no girl was waiting for Wright, it was impossible to know if Wright truly intended to follow through with the planned transaction. The judge denied the motion. Wright did not testify or present evidence.

The judge then found Wright guilty of both counts and entered written findings of fact and conclusions of law. Later, Wright was sentenced to 324 months on Count One and a consecutive 120 months on Count Two, for a total of 444 months' imprisonment, plus supervised release for life.

On appeal, Wright challenges his conviction on Count One, arguing that the evidence was insufficient to find beyond a reasonable doubt that he intended to have sex with the fictitious granddaughter or that he took a substantial step towards doing so. Wright faces a difficult standard because we view the evidence in the light most favorable to the prosecution and overturn a conviction only if the record contains "no evidence, regardless of how it is weighed, from which the jury could find guilt beyond

a reasonable doubt." *United States v. Norwood*, 982 F.3d 1032, 1039 (7th Cir. 2020); *United States v. Medina*, 969 F.3d 819, 821 (7th Cir. 2020) (same standard for bench trials).

Wright first reprises his argument that, because he told agents that he did not intend to have sex with the 15-year-old for $100, the other evidence was insufficient to establish guilt. Not so. The district court did not have to credit the statement Wright made to the agent, and his actions that contradict those words are sufficient evidence of his intent. Negotiating the price and delivery of an illegal good (or service) supports an inference of intent to complete the illegal activity. *See United States v. Johnson*, 592 F.3d 749, 758 (7th Cir. 2010) (phone calls negotiating the price and arranging for the delivery of crack cocaine). Wright discussed the price, time, and location for a sexual encounter with Baily's elder granddaughter. Further, Wright asked Baily multiple times to confirm that she was not a law enforcement officer and asked for proof in the form of revealing photographs; these "precautions strongly suggest[] a desire for sex" with the victim. *United States v. Hensley*, 574 F.3d 384, 391 (7th Cir. 2009); *see also United States v. Chambers*, 642 F.3d 588, 593–94 (7th Cir. 2011). Finally, Wright lied to federal agents in saying that "bj" meant "brake job," and a cover story can be probative of guilt. *See United States v. Mbaye*, 827 F.3d 617, 620 (7th Cir. 2016).

For similar reasons, the record belies Wright's contention that there is insufficient evidence that he took a substantial step towards paying for sex with the teen. He not only made arrangements like "agreeing on a time and place for the meeting," *United States v. Gladish*, 536 F.3d 646, 649 (7th Cir. 2008), but came within feet of the meeting place with the agreed-upon payment in his pocket. Although Wright urges us not to rely on *Gladish* because intent is a "fact specific" inquiry, the facts adduced at trial were enough to prove a substantial step towards consummating the offense. *See id*.

The judgment is AFFIRMED.