# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-3787

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARTHUR L. RAMSEY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 03-30055-WDS—**William D. Stiehl**, *Judge.*

_____

ARGUED APRIL 8, 2004—DECIDED APRIL 18, 2005

_____

Before KANNE, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* After a jury trial, Arthur L. Ramsey was acquitted of assaulting a federal officer with a dangerous weapon and found guilty of maintaining a drug house by permitting his son to use the mobile home he leased for distributing and possessing with intent to distribute crack cocaine. Although Ramsey appeals the district court's denial of his motion to dismiss from the indictment of the drug house count, we find that the indictment included the essential elements of the crime. We also find

based on our review of the evidence that the district court's failure to include the statute's *mens rea* requirement was harmless error. Thus, we affirm Ramsey's conviction. However, in light of the Supreme Court's recent decision in *United States v. Booker*, 125 S.Ct. 738 (2005), and this court's decision in *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), we order a limited remand regarding Ramsey's sentence.

## I.  Background

After receiving a tip from a confidential informant that drug activity was taking place at a trailer located at 2820 Calvin Boulevard, Lot 20 in Cahokia, Illinois, and following several controlled buys of drugs at the trailer, law enforcement obtained a warrant to search the mobile home. At that time, law enforcement had no information relating to defendant Arthur Ramsey.

Concerned about the possible presence of guns in the home, a total of eighteen state and federal officers executed the search warrant using a battering ram to gain entry. Upon entry, Ramsey hit the lead officer of the entry team, Investigator Tom Trice, of the St. Clair County Sheriff's Department, with a two-by-two stick at least twice. Eventually, officers secured Ramsey. The officers continued to search the home and found another individual, Marrio Robinson, who had crack cocaine in his jacket. Crack and powder cocaine was also seized from a vacuum cleaner found in Ramsey's bedroom. In addition, two guns—one found beneath the bathroom sink and the other in the back bedroom—were seized from the property. Robinson told the officers of other places in the trailer where drugs were hidden. Police also found a small scale on top of the kitchen counter. Both Ramsey and Robinson were arrested that day. The next day, Ramsey signed a statement in which he admitted that he rented the trailer from his daughter, that

Marrio Robinson was his son, and that Robinson moved in with Ramsey. Ramsey admitted that he knew Robinson dealt drugs out of the trailer. Ramsey also stated that he told Robinson to stop dealing drugs, however Robinson ignored him.

Ramsey was charged with assaulting a federal officer with a dangerous weapon, in violation of 18 U.S.C. § 111, and with maintaining a drug house in violation of 21 U.S.C. § 856(a)(2). At trial, one of the persons who participated in the controlled buys from the trailer, Darin Varner, testified that he had purchased crack cocaine from Robinson at the trailer 35 to 40 times and that Ramsey was sometimes present and would see Varner purchase the crack cocaine from Robinson. On other occasions, Ramsey would leave the room during the transactions. At the close of the prosecution's case, Ramsey moved to dismiss the charge for maintaining a drug house (Count VII) for failure to allege that he managed and controlled the premises at issue. The district court denied that motion. Over Ramsey's objection, the district court granted the prosecution's request to remove the word "intentionally" from the jury instructions on the same count. The jury acquitted Ramsey of the assault charge. However, the jury found Ramsey guilty of maintaining a drug house.

At sentencing, the district court found Ramsey's relevant conduct to have involved approximately 20.8 grams of crack cocaine. The district court concluded that based on Ramsey's criminal history category of I combined with his offense level of 24, his possible sentence under the United States Sentencing Guidelines ranged from 51 to 63 months. The district court sentenced Ramsey to a term of imprisonment of 54 months, two years of supervised release, a fine of $400, and a special assessment of $100. Ramsey appeals the sufficiency of the indictment, the content of the jury instructions, sufficiency of the evidence, and the length of his sentence.

## II. Analysis

### A. Sufficiency of the Indictment

Ramsey asserts that the district court erred by denying his motion to dismiss the charge of maintaining a drug house (Count VII) from the indictment. Ramsey argues that the charging document failed to allege that he managed or controlled the mobile home he was leasing, which is an essential element of the crime charged.

This court reviews the sufficiency of an indictment de novo. *United States v. Sandoval*, 347 F.3d 627, 633 (7th Cir. 2003); *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002). We deem an indictment sufficient if it: (1) states the elements of the offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense. *McLeczynsky*, 296 F.3d at 636 (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Moreover, we review indictments "on a practical basis and in their entirety, rather than in a hypertechnical manner." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000) (internal citations omitted).

Ramsey claims that Count VII of his indictment did not state all the elements of 21 U.S.C. § 856(a)(2), the offense for which he was charged. That statutory provision makes it unlawful to:

> manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

Count VII of the indictment alleges that Ramsey:

> did knowingly and intentionally, as the lessee, make available for use a place, to wit: defendant permitted a mobile home he leased, located at 2820 Calvin, Lot 20, in Cahokia, Illinois, in the Southern District of Illinois, to be used for the purpose of distributing and possessing with intent to distribute controlled substances, namely mixtures and substances containing a detectable amount of cocaine base, commonly known as 'crack' cocaine, a Schedule II Controlled Substance, in violation of Title 21[ ] U.S.C. § 856.

Clearly the indictment failed to use the words "manage or control."

However, this court has held that not explicitly including all the elements of the offense in an indictment is not fatal so long as the absent elements can be deduced from the language that is actually included in the charging document. *See United States v. Smith*, 223 F.3d 554, 571 (7th Cir. 2000) ("It is not necessary to spell out each element, but each element must be present in context."); *see also United States v. Hernandez*, 330 F.3d 964, 978 (7th Cir. 2003) ("[The] words [employed in the indictment] sufficiently convey the notion of knowledge and intent, so it cannot be said that this indictment fails to charge the offense by any reasonable instruction." (internal citations omitted)). The question therefore becomes whether "mak[ing] available" a place for illicit use, that he "permitted a mobile home he leased," and the description of Ramsey "as the lessee" together sufficiently encompass the meaning of "manage and control" to sustain the indictment lacking those terms.

One cannot reasonably make a place available for another's use nor permit another to use it if one does not manage or control the place. The indictment's use of the word "permitted" is particularly noteworthy here. Furthermore, the indictment's inclusion of the fact that Ramsey "leased"

the mobile home in question and that he was "the lessee" also suggest he had control over the establishment. On balance, while we agree that the indictment was not a model charging document, under *Smith* and *Hernandez*, it is sufficient.[1]


## B.  Jury Instructions

Ramsey contends we should reverse his conviction for maintaining a drug house in violation of 21 U.S.C. § 856(a)(2) because the district court did not properly instruct the jury on the *mens rea* requirement under the statute, despite Ramsey's objection.  In our review of jury instructions for alleged errors of law, we reverse only if the instructions, "viewed as a whole, misguide the jury to the litigant's prejudice." *United States v. Souffront*, 338 F.3d 809, 834 (7th Cir. 2003); *Smith*, 223 F.3d at 566. We note that as long as "the instructions treat the issues fairly and accurately, they will not be disturbed on appeal." *Souffront*, 338 F.3d at 834 (internal citations omitted).

As noted above, Title 21 U.S.C. § 856(a)(2) provides:

> it shall be unlawful to . . . manage or control any
> place, whether permanently or temporarily, either
> as an owner, lessee, agent, employee, occupant, or

---

[1]  Ramsey points to the Tenth Circuit's decision in *United States v. Brown*, 995 F.2d 1493 (10th Cir. 1993) to support his claim. That case held that the government's failure to include in the indictment for a violation of § 856(a)(2) the allegation that defendant was an owner, lessee, agent, employee or mortgagee amounted to a failure to allege all the essential elements of the offense under § 856(a)(2) and hence was a jurisdictional defect requiring dismissal. However, the Tenth Circuit overruled *Brown* in *United States v. Prentiss*, 256 F.3d 971 (10th Cir. 2001), which held that such defects in an indictment are now subject to harmless error review.

mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

Ramsey directs our attention to the *mens rea* language "knowingly and intentionally." However, the district judge issued the following instruction on this point:

> To sustain the charge of making available a place for use for the purpose of distributing and possessing with intent to distribute controlled substances, as charged in Count 7 of the Indictment, the Government must prove: First, that the defendant controlled, or managed as a lessee a place, to wit, the mobile home he leased located at 2820 Calvin Lot 20, Cahokia, Illinois. And second, that the defendant knowingly allowed others to use said place for the purpose of the distribution and possession with intent to distribute crack cocaine, or remained deliberately ignorant of it.

In other words, the district court did not include the "intentionally" element in its instruction, despite Ramsey's objection. Further, the district court defined deliberate ignorance as follows:

> As used in these instructions, the purpose may be that of others. The defendant is liable if he manages or controls a building that others use for an [illicit] purpose, and he either knows of the illegal activity or remains deliberately ignorant of it. The illegal purpose need not be the sole or primary use of the place in question[;] it is sufficient if it is one of the uses in question.

Several circuits, including this one, have held that knowing or "remaining deliberately ignorant" satisfies the knowledge component of § 856(a)(2). *See United States v. Banks*, 987

F.2d 463, 466 (7th Cir. 1993) ("In (a)(2) the 'purpose' may be that of others; the defendant is liable if he manages or controls a building that others use for an illicit purpose, and he either knows of the illegal activity or remains deliberately ignorant of it."); *United States v. Chen*, 913 F.2d 183, 192 (5th Cir. 1990) ("[W]e hold that the phrase '*for the purpose of*' contained in § 856(a)(2) of the statute does not preclude a deliberate ignorance instruction for the knowledge element of that subsection.") (emphasis in original); *United States v. Tamez*, 941 F.2d 770, 774 (9th Cir. 1991) ("[Section 856] (a)(2) was intended to prohibit an owner from providing a place for illegal conduct, and yet to escape liability on the basis either of lack of illegal purpose, or of deliberate ignorance . . . section 856(a)(2) requires only that proscribed activity was present, that [the defendant] knew of the activity and allowed that activity to continue.") Yet, as Ramsey points out, a deliberate indifference instruction only goes to the statute's knowledge requirement.

The "intentionally" element can be satisfied by the government proving beyond a reasonable doubt that the defendant intentionally permitted another person to use the property at issue and that the other person used it for an illicit purpose about which the defendant knew. *See Tamez*, 941 F.2d at 774 (holding that § 856(a)(2) "was intended to prohibit an owner from providing a place for illegal conduct, and yet to escape liability on the basis either of lack of illegal purpose, or of deliberate ignorance"); *United States v. Bilis*, 170 F.3d 88, 92 (1st Cir. 1999) (stating § 856(a)(2) requires the government to prove beyond a reasonable doubt "(1) that [the defendant] managed or controlled [the place at issue]; (2) *that [the defendant] knowingly and intentionally made [the place] available for use to others*; and (3) that [the defendant] made [the place] available for the purpose of unlawfully possessing or distributing a controlled substance." (emphasis added)).

Ramsey claims that he could have argued at trial he did

not intentionally allow his son Marrio Robinson to use the mobile home but rather was coerced into doing so, given the presence of Robinson's guns. While this argument might negate the "intentionally" component of the offense, Ramsey did not raise it in the trial court. Nor did he offer a jury instruction that would negate his intent to allow his son to use his home. These arguments are therefore waived. *Belom v. Nat'l Futures Ass'n*, 284 F.3d 795, 799 (7th Cir. 2002) ("[A]s we have often observed, arguments not raised in the district court are waived on appeal.") Even if we were to reach the issue, Ramsey admitted to the police after his arrest that he allowed his son to live with him in the mobile home.

In any case, "[a] court of review should proceed cautiously when asked to set aside a jury's verdict . . . on the ground that the instructions contained erroneous or confusing passages." *United States v. Goines*, 988 F.2d 750, 773 (7th Cir. 1993) (internal citations omitted). And if "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," then the error was harmless. *Neder v. United States*, 527 U.S. 1, 15 (1999) (applying harmless error analysis to the district court's failure to include an element of an offense in its instructions to the jury). In other words, if the evidence is so strong that a jury would have reached the same verdict absent the erroneous jury instruction, then the error is harmless. *Goines*, 988 F.2d at 773. Upon our review of the sufficiency of the evidence detailed below, we conclude that the district court's failure to include in its instructions to the jury that it must find Ramsey "knowingly and intentionally" made his leased home available for his son's illegal use amounted to harmless error beyond a reasonable doubt. *Cf. Hernandez*, 330 F.3d at 978-79 (finding no plain error when jury instructions omitted the statute's scienter requirement of "intentionally" and only included "knowingly" when other words used in the instructions were sufficient to convey the requisite

mental state).

## C.  Sufficiency of the Evidence

On challenges to the sufficiency of evidence, "we review the evidence in the light most favorable to the prosecution and will reverse a jury verdict only when the record is devoid of any evidence, regardless of how it is weighed, from which a jury could find the defendant guilty beyond a reasonable doubt." *United States v. Macedo*, 371 F.3d 957, 965 (7th Cir. 2004) (internal citations omitted).  We note that while an insufficiency of the evidence claim is not impossible, "it is nevertheless a steep hill to climb." *Id.*

Ramsey appeals the district court's decision to enter judgment on the jury's guilty verdict on the charge under 21 U.S.C. § 856(a)(2), claiming that there was insufficient evidence to support a finding that he maintained a drug house in violation of the statute. He contends that the government submitted no evidence demonstrating that he acted "intentionally," as the statute requires. As a result, Ramsey argues, no rational jury could have found that he so acted beyond a reasonable doubt and his conviction must be reversed. We disagree. There was ample evidence demonstrating that Ramsey intentionally allowed his son Marrio Robinson to use the mobile home Ramsey leased. Ramsey admitted to the police that he rented the trailer from his daughter and that his son moved in with him. He also admitted to the police that he knew Robinson dealt drugs out of the mobile home. There was no evidence that Robinson coerced his father into allowing Robinson to live there. Further, Varner (one of the persons who participated in controlled drug buys leading to Ramsey's and Robinson's arrests) testified that he bought crack cocaine from Robinson in a house he shared with Ramsey in Belleville, Illinois, before they moved to the mobile home in Cahokia.

The other evidence submitted to the jury also supports a finding of guilt. Varner testified that he bought crack cocaine from the mobile home at all hours of the day and night. Varner also testified that he had seen guns, drugs, and a scale used to measure the drugs, all in common areas in the trailer. Agents watching the trailer noted suspicious activity, such as numerous cars driving up to the home and people briefly entering and leaving the home. In addition, crack cocaine, a scale, and guns were all found in Ramsey's home. The record is not devoid of evidence from which a jury could find Ramsey guilty beyond a reasonable doubt.

**D. Sentence**

Ramsey argues that the district court erred in sentencing him in violation of the Sixth Amendment when the district court, and not a jury, made its own finding of the amount of crack cocaine involved in Ramsey's offense. This finding by the district court increased Ramsey's sentence. Recently, the Supreme Court held that any fact, other than a defendant's prior conviction, used to increase one's sentence must be admitted by the defendant or found beyond a reasonable doubt by a jury. *United States v. Booker*, 125 S.Ct. 738, 756 (2005).

Because Ramsey did not raise his Sixth Amendment objection in the district court, we review for plain error. "Under [the plain error] test, before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *United States v. Cotton*, 535 U.S. 625, 631 (2002) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Johnson*, 520 U.S. at 467).

Enhancement of Ramsey's sentence based on facts not admitted by the defendant or proven to a jury beyond reasonable doubt does, under the new *Booker* regime, constitute error that is plain. *See Paladino*, 401 F.3d at 481. The 54-month sentence Ramsey received was toward the low end of the then-mandatory Guideline range. We are unable to determine whether Ramsey was prejudiced, however, because we cannot know whether the district court, with the increased discretion permitted by *Booker*, would have imposed the same sentence. Therefore, we will retain jurisdiction of the appeal and "order a limited remand to permit the sentencing judge to determine whether he would (if required to resentence) reimpose his original sentence." *Id.* at 484. On remand, the district court should proceed with the procedure we set forth in *Paladino*. If the district court determines that it would have imposed the same sentence, we may know for certain that Ramsey was not prejudiced. Without a showing of prejudice, Ramsey's plain error challenge will fail. We will still, however, review the sentence for reasonableness. *Id.* If the district judge determines that with more discretion, the sentence would have been different, we will vacate and remand the case for resentencing, having predetermined that such an illegal sentence that has prejudiced the defendant constitutes a miscarriage of justice. *Id.*

### III.  Conclusion

For the reasons stated above, we AFFIRM Ramsey's conviction. While retaining jurisdiction, we order a limited REMAND of Ramsey's sentence in accordance with *Booker*, *Paladino*, and this opinion. The district court is directed to return this case to us when the limited remand has been completed.

A true Copy:

    Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—4-18-05