In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2787

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARK CIESIOLKA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:06 cr 163—**Rudy Lozano**, *Judge*.

ARGUED APRIL 21, 2010—DECIDED JULY 26, 2010

Before CUDAHY, RIPPLE, and HAMILTON, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Mark Ciesiolka was convicted in 2008 of knowingly attempting to persuade, induce, entice and coerce a minor to engage in sexual activity under 18 U.S.C. § 2422(b). His prosecution emanated from a police sting operation, in which an officer, purporting to be a 13-year-old girl named "Ashley," engaged in series of sexually explicit, instant-messaging ("IM") conversations on an online Yahoo forum with the defen-

dant. The sting, however, was marred by numerous oddities. The profile created by the officer displayed a photo of a woman in her late 20s and indicated that the user's interests included "beer" and "Purdue University." When asked by the defendant to send pictures during their IM conversations, the officer inexplicably sent a photo of a woman in her late 20s. Ciesiolka remarked that she looked 21. Ashley nevertheless maintained that she was just 13. Although Ciesiolka and the officer agreed to meet at a Pizza King, the defendant evidently got cold feet and, despite repeated encouragement from Ashley, declined to meet. The officer admitted: "I lie about my age."

The crime with which Ciesiolka was charged required the government to prove beyond a reasonable doubt that the defendant believed that "Ashley" was under 18. We find that the district court improperly relieved the government of that burden by providing the jury with an ostrich instruction. Moreover, given the somewhat bizarre nature of the sting operation itself, replete as it was with suggestions that Ashley may have been an adult, it is perhaps unsurprising that the government sought to bolster its case. It did so by introducing voluminous evidence under Fed. R. Evid. 404(b) of the defendant's other IM conversations with unknown third parties, over 100 images of child pornography and/or erotica discovered on his computer and testimony from a woman, "SC," who claimed that Ciesiolka had had sex with her several times when she was 15. This evidence took up an entire day of a three-day trial and yet, at the time of its introduction, was subject only to a single,

pro forma limiting instruction. Because the district court failed to explain its ruling that the four-factor test for introducing evidence of prior acts under Rule 404(b) was satisfied, and since the evidence introduced in unconstrained fashion strikes us as perhaps being excessively prejudicial in light of its probative value, we reverse and remand for a new trial.

## I. BACKGROUND

Pursuant to Indiana's Safe Childhood Project, Detective Sergeant Carrie Costello, an officer with the Purdue University Police Department, initiated an Internet sting operation to lure and prosecute pedophiles who were operating online. The defendant in the present case, Mark Ciesiolka, walked right into the trap. On August 2, 2006, he encountered a person by the name of "Ashley" in a Yahoo adults-only chat room, entitled "Indiana Romance." Ashley's Yahoo profile photo was of a woman in her 20s (a fellow police officer) and her stated interests included "Purdue University" and "beer." The profile did not state her age.

Starting on August 2 and proceeding over the following two-and-a-half weeks, Ciesiolka and Ashley exchanged numerous, sexually explicit IM messages. At trial, those messages were read aloud to the jury by officer Costello, playing herself, and by special agent Christian Ebel-Orr, playing the role of Ciesiolka. The defendant and Ashley informed each other that they lived in Columbus and Lafayette, respectively. He asked her why she was in a forum for married people. He inquired as to whether her

mom and dad were home, and asked whether she had a boyfriend. Somewhat oddly, in response to Ciesiolka's request for pictures of herself, Ashley sent a different photo of the same woman in her late 20s whose picture adorned Ashley's online profile. Ciesiolka responded that she looked 21 or so. Ashley, however, maintained that she was only 13.

The defendant asked Ashley whether she was a virgin and whether she masturbated. She feigned the lack of knowledge one might expect of a 13-year-old, saying that she "think[s] so . . . means no sex, right?" As to masturbation, she wrote "[n]ot sure what that is." During ensuing conversations, the defendant requested more photos; Ashley repeatedly asked to see him on his web cam. Ashley told him she'd gotten in trouble for staying over at a friend's house where her friend had gotten some beer. When asked how much she drank, Ashley explained: "I didn't. Don't like the taste of beer, really, but everyone else did, so I got in trouble." Later, Ashley wrote that she doesn't usually wear panties, but when she does they're thongs. The defendant subsequently provided her with instructions on how to masturbate. Ashley referred to her mother's being "40 something." When asked whether she shaves, she replied that there's "[n]ot much to shave." The defendant exposed himself and masturbated via his web cam during an IM exchange. He later asked whether it was sad that he was "looking to a younger lady to tell [him] that [he was] still sexy."

Following these IM conversations, which were both more explicit and offensive than the preceding summary

might suggest, the talk eventually turned to meeting up. Ciesiolka said: "I would come see you but might get in trouble." He and Ashley ultimately agreed to meet at a Pizza King at 5 o'clock on Friday, August 18. This seemed like an opportune time, since Ashley said that her mother was leaving that Friday for the weekend to attend a wedding. Ashley said that she would tell her mom that she was meeting friends to eat. Later, the defendant asked Ashley if she'd mind if he brought his 12-year-old son with him to their meeting. He asked whether she'd have sex with him and explained that he'd teach both of them. On August 14, Ciesiolka asked whether "she was going to tell on [him]," explaining that he "would get into really big trouble."

Despite the arrangement, Ciesiolka never showed up on August 18. In a subsequent message, the defendant explained to Ashley that he couldn't meet with his son there, since he believed his son would tell. Ashley then wrote: "I lie about my age." When Ashley subsequently referenced her upcoming birthday, Ciesiolka asked: "You will be 15?," to which Ashley responded "14."

Following the last IM conversation, the authorities were able to track down the defendant, who was arrested on August 19. During the ensuing trial, the government introduced evidence of Ciesiolka's prior bad acts under Fed. R. Evid. 404(b). This included other IM conversations the defendant had had with unidentified third parties—exchanges that were replete with lewd and offensive details. The jury was also shown approximately 100 images of child pornography or "child erotica" that

had been found on the defendant's computer. In addition, the jury heard testimony from a woman to the effect that the defendant had had sex with her numerous times when she was 15 years old.

The content of his IM conversations with Ashley, in conjunction with the Rule 404(b) evidence introduced by the government at trial, makes clear that Ciesiolka is, at the very least, a potentially dangerous individual. But that fact does not translate into our affirming his ensuing conviction. Because we find numerous errors in the district court's handling of the present case, and since we cannot confidently conclude that these errors were harmless, we reverse and remand for a new trial.

## II. DISCUSSION

A. *The District Court Erred in Providing the Jury with an Ostrich Instruction*

A focal point of Ciesiolka's appeal concerns his strenuous objection to the district court's jury instruction number 18 (the "ostrich instruction"), which provided:

> You may infer knowledge from a combination of suspicion and indifference to the truth, if you find that a person had a strong suspicion that things were not as they seemed or that someone had withheld some important facts, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly, as I have used that word. You may not conclude that the Defendant had knowledge if he was merely negligent in not discovering the truth.

Ciesiolka contends that this instruction served to relieve the government of its obligation to prove beyond a reasonable doubt that he believed that Ashley was a minor. He argues that the instruction allowed the jury to convict him based merely on his suspicion of, and indifference to, Ashley's being underage. Ciesiolka also contends that an ostrich instruction has no proper application to the present setting, where learning the "truth" would have revealed that "Ashley" was an adult police officer. Of course, discovering that truth from the outset would have resulted in Ciesiolka's not having violated 18 U.S.C. § 2422(b).

We are thus faced with the question whether the ostrich instruction was appropriately given to the jury. This specific question, arising in the context of 18 U.S.C. § 2422(b), is a matter of first impression for this court.

An ostrich instruction obviously fits somewhat awkwardly with a sting operation of the kind presented by this case. Such an instruction is typically employed to capture individuals who deliberately close their eyes to the truth. *See United States v. Carani*, 492 F.3d 867, 873 (7th Cir. 2007). We have approved the use of ostrich instructions in a few cases involving police undercover or "sting" operations, but only in limited circumstances and while recognizing the danger that such instructions could relieve the government of its burden of proving the elements of an offense beyond a reasonable doubt. For example, in *United States v. Kaufmann*, 985 F.2d 884, 896-97 (7th Cir. 1993), the defendant was charged with four money laundering counts involving real criminals with

money from real criminal dealings, but he was not convicted on those charges. He was convicted only on one charge of attempted money laundering, which involved an undercover agent's planned purchase of a sports car for cash using a straw purchaser. We held that an ostrich instruction was appropriate for the first four counts. The jury instructions distinguished between knowledge for the first four counts and the belief required to convict on the sting count. Those steps prevented the jury from being misled into finding "belief" on the fifth count by finding only strong suspicion plus indifference to the truth. *Id.* at 896-97.

Similarly, in *United States v. Wilson*, 134 F.3d 855 (7th Cir. 1998), the defendant was caught in a sting operation in which he delivered real cocaine, but he denied knowing that the bags contained cocaine. We affirmed the use of an ostrich instruction under those circumstances, where the truth the defendant denied was actually incriminating rather than exonerating. *Id.* at 868-69. And in *United States v. Inglese*, 282 F.3d 528 (7th Cir. 2002), the defendants were convicted of selling firearms to undercover agents posing as customers with felony convictions that barred them from lawful purchases. We affirmed the use of an ostrich instruction where there was ample evidence that the agents had made it clear that the sales would be illegal. *Id.* at 537-38. The use of a straw purchaser for firearms was illegal even if the "customers" were undercover agents.

These narrow uses of ostrich instructions do not extend to the circumstances of this case, in which knowl-

edge of "Ashley's" real age would have exonerated the defendant rather than incriminated him. We have not approved the use of an ostrich instruction that applied to a defendant's mistaken belief about circumstances where knowledge of the truth would exonerate a defendant, such as "Ashley's" true age in this case or the fact that the suspicious substance was baking powder rather than cocaine in another sort of case. If a district court gives an ostrich instruction in sting cases, it must take great care to ensure that the jury understands that the instruction should not be applied to issues as to which a defendant's knowledge of the real truth would actually exonerate him. In this case, the principal issue in dispute, if not the only one, fits that description. Accordingly, we find that it was error to give the ostrich instruction in this case.

Even if the ostrich instruction might otherwise have been proper, there is a second problem with its use in this case. We have previously made clear that such an instruction must be given cautiously, lest a jury improperly convict a defendant on the basis of negligence. *See United States v. Carrillo*, 435 F.3d 767, 781 (7th Cir. 2006). Of course, ostrich instructions bearing the potential for misapplication does not mean they are categorically improper. We have explained that they are appropriately given to a jury when: (1) a defendant claims a lack of guilty knowledge and (2) the government presents evidence that suggests that the defendant deliberately avoided the truth. *See United States v. Garcia*, 580 F.3d 528, 537 (7th Cir. 2009). Ciesiolka claims a lack of guilty knowledge; thus, the issue is whether the gov-

ernment introduced sufficient evidence that he remained deliberately ignorant, thus justifying the instruction. *See id.* It is with respect to this second requirement that the government runs aground.

Reviewing the record, we do not see what steps the defendant avoided taking to make sure he did "not acquire full or exact knowledge" of Ashley's age. *See United States v. Giovannetti*, 919 F.2d 1223, 1228 (7th Cir. 1990); *cf. United States v. Inglese*, 282 F.3d 528, 537 (7th Cir. 2002). There is little evidence, which we can discern, that suggests that avenues open to Ciesiolka to confirm Ashley's age remained unavailed of. Defendant did not try to hide from knowledge about Ashley's age—he repeatedly raised the issue with her and received conflicting information. He asked her her age. Reminded that her birthday was coming up, he asked her whether she would be 15. She corrected him, saying that she would be 14. He asked her whether her parents were home. He impressed upon her the importance of her not telling anyone about their conversations or potentially meeting up. She told him about her lack of sexual experience and that her mother was "forty something." All this inculpatory evidence goes to Ciesiolka's belief as to Ashley's age. But none of it suggests that Ciesiolka deliberately closed his eyes as to her age; it rather appears that he took active steps to discover it. Beyond the previous examples, including the obvious one of his actually asking her her age, he asked for pictures of her. When presented with a photo of a woman in her 20s, he took positive steps to inquire as to her age, observing that she

looked 21, and perhaps 18 or 19. She assured him that she was only 13. These are not the acts of a person who deliberately avoids learning the truth.

Complicating matters further, defendant argues that he thought "Ashley" was an adult woman pretending to be a 13-year-old girl to play along with his fantasies. Some evidence lends support to this argument. Ashley's profile photo was that of an adult woman in her late 20s. Her stated interests included beer and Purdue University. Perhaps the most perplexing feature of the present case is that, in response to Ciesiolka's request for pictures of her, Ashley sent another photo of the same adult woman who adorned her Yahoo profile. One strains to understand why a police officer in a sting operation of this sort would send such a picture, which at best would serve to inject confusion, uncertainty and suspicion as to the "victim's" age. In fact, it could surely have led Ciesiolka to believe that "Ashley" was an adult, pretending to be younger than she was.[1] The unusual circumstances may

---

[1] When pressed at oral argument to explain this bizarre move, counsel for the United States explained that the officer could not in good conscience have sent a picture of an actual child to Ciesiolka, knowing full well what the defendant would have used the picture for. This does not change the fact that the police officer would have been far better off not sending any photo whatsoever instead of sending the picture that she did. If she felt compelled to send some photo, however, she could presumably have sent an old one of herself or one of her fellow officers as a child. None of these avenues would seem to

(continued...)

even have led the defendant to suspect that Ashley was in fact a police officer, which would be consistent with his failing to appear at the agreed time and his subsequent reluctance to interact with her.

On this record, with its conflicting information about Ashley's age, and at least apart from the quantity of evidence admitted under Rule 404(b), defendant's argument that he believed Ashley was an adult pretending to be 13 years old has some evidence to support it. As a result, the ostrich instruction could have invited the jury to convict the defendant based on mere suspicion and indifference as to her true age, where knowledge of her true age would have exonerated him rather than incriminated him.

The lack of evidence in the record suggesting Ciesiolka's taking steps not to acquire knowledge of Ashley's age also renders the district court's ostrich instruction erroneous. The effect of the instruction was indeed to enable the jury to convict Ciesiolka not because it determined that he believed that Ashley was under 18, but because it concluded that he was suspicious and indifferent to whether she was underage. We therefore agree with the appellant that this served improperly to relieve the government of its burden of proof.

---

[1] (...continued)
have presented ethical issues of the sort deemed controlling by counsel at oral argument.

Such an error does not necessarily require us to vacate the conviction and sentence imposed by the district court, however. Instead, we must determine whether the error was harmless. We will reach that conclusion "if the evidence is so strong that a jury would have reached the same verdict absent the erroneous instruction." *United States v. Ramsey*, 406 F.3d 426, 432 (7th Cir. 2005). It is possible that an erroneously provided ostrich instruction can be harmless. *United States v. Nobles*, 69 F.3d 172, 187 (7th Cir. 1995).

We cannot confidently conclude that the erroneous instruction was harmless in the present case. We are mindful of the risk that our relying on the weight of the evidence alone to determine harmless error may involve our usurping the function of the jury. *See United States v. Peak*, 856 F.2d 825, 835 n.7 (7th Cir. 1988); *see also Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005); *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1218 (D.C. Cir. 1997) (Edwards, C.J., concurring).

Although there is sufficient inculpatory evidence for a jury to find that Ciesiolka believed "Ashley" was a minor, the evidence certainly does not compel that conclusion. In so holding, we would seem to part company with the dissent, which contends that the "transcripts of the conversations between Mr. Ciesiolka and 'Ashley' gave the jury a very firm basis for concluding that Mr. Ciesiolka believed Ashley was a minor." Dissent at 24. It seems to us that "a very firm basis" is far from synonymous with "conclusive." *Cf. United States v. Hatfield*, 591 F.3d 945, 951 (7th Cir. 2010) (remanding for retrial because

the "evidence . . .[,] though strong enough to justify a verdict of guilt beyond a reasonable doubt, was not conclusive"). In any event, we do not believe that the transcripts of the IM conversations between Ciesiolka and Ashley provide conclusive evidence that the defendant believed he was in fact conversing with a minor. Indeed, the government's case against the defendant was beset by numerous and obvious problems, not the least of which were Ciesiolka's commenting that Ashley looked 21 or so, as well as Ashley's profile photo and the photo she sent the defendant being those of an adult woman in her late 20s, in addition to her stated interests in beer and Purdue University.

As the Supreme Court has instructed, the relevant question must be: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" *Neder v. United States*, 527 U.S. 1, 18 (1999). Given the significance of the error in introducing a jury instruction that relieved the government of its burden of proof, in addition to the exculpatory evidence just noted, we cannot answer this question in the affirmative.

It is only when one embraces the extravagantly profuse indications of the defendant's prior bad acts introduced under Rule 404(b) that his guilty intent and knowledge become more plausible. It is unsurprising, then, that the dissent is forced to focus almost exclusively on this Rule 404(b) evidence. Indeed, the dissent's approach is much like that of the government, which made up for an evidentiary shortfall concerning the crime charged by

spending a full day of a three-day trial showcasing the defendant's alleged bad acts in front of the jury. As we explain below, we have grave concerns about the manner in which the district court allowed this evidence to be introduced. Since we conclude that the district court failed adequately to explain its reasoning in applying the Rule 404(b) factors before allowing the evidence to be admitted, we will not use this prior-act evidence to find that the district court's mistaken ostrich instruction was harmless.

In light of the relevant evidence, there is a distinct likelihood that the jury convicted Ciesiolka based on his being merely suspicious and indifferent about Ashley's age, rather than on a factual determination, beyond a reasonable doubt, that the defendant believed Ashley was a minor. We therefore reverse the judgment and sentence of the district court and remand for a new trial. As we now explain, this conclusion is bolstered by the district court's handling of the government's Rule 404(b) evidence.

B. *The District Court Erred in Failing to Explain its Reasoning in Admitting Highly Prejudicial Evidence Under Fed. R. Evid. 404(b)*

Ciesiolka contends that the profuse evidence of his prior bad acts was improperly admitted under Fed. R. Evid. 404(b), which requires reversal. In considering this argument, it is important that we delineate precisely the legitimate ends to which the evidence could be applied. It is black-letter law that the government cannot introduce

evidence of a defendant's prior bad acts to show her propensity to commit the charged crime. *See* Fed. R. Evid. 404(a); *United States v. Perkins*, 548 F.3d 510, 513 (7th Cir. 2008). Such evidence may be admitted, however, for non-propensity purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." Fed. R. Evid. 404(b). Nevertheless, evidence sought to be introduced for one of these legitimate purposes will not be admitted if the evidence fails to meet the requirements of Rule 403. *Perkins*, 548 F.3d at 514. Specifically, in addition to being offered for non-propensity purposes, the evidence must (1) show that the prior act is similar enough and close enough in time to be relevant to the matter in issue; (2) be sufficient to support a jury finding that the defendant committed the similar act; and (3) have probative value that is not substantially outweighed by the danger of unfair prejudice. *Id.*

In the present case, the issue for the jury was whether Ciesiolka believed that "Ashley" was under 18. It bears emphasizing that 18 U.S.C. § 2422(b) requires proof of specific intent. *See, e.g.*, *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004). It is well established that, with specific-intent crimes, "the government may present other acts evidence to prove intent." *United States v. Long*, 86 F.3d 81, 84 (7th Cir. 1996) (quoting *United States v. Smith*, 995 F.2d 662, 672 (7th Cir. 1993), *cert. denied sub nom. Marren v. United States*, 510 U.S. 1056 (1994)). The question is what limits on such evidence of "other acts" must be invoked consistent with the strictures of Fed. R. Evid. 403.

As noted above, the evidence concerning the defendant's online interaction with "Ashley" is somewhat equivocal. The photos of Ashley were of a woman in her 20s. She admitted to lying about her age. Ciesiolka commented that she looked 21. Her interests, as described on her Yahoo profile, included beer and Purdue University. Such facts lend strong support to the defense argument that Ciesiolka believed he was interacting with an adult.[2] It may have been the case, for instance, that the defendant believed Ashley was an adult purporting to act as a minor. If this were the case, Ciesiolka could have gone along with the fantasy without violating 18 U.S.C. § 2422(b).

Were the jury limited to considering direct evidence of Ashley and Ciesiolka's online exchanges alone, these exculpatory facts might have been enough to create reasonable doubt in the minds of the jury. No doubt aware of this possibility, the government appealed to evidence of prior bad acts to establish that the defendant in fact believed he was interacting with a minor.

---

[2] Of course, there is considerable inculpatory evidence within the defendant and Ashley's IM conversations. For instance, Ciesiolka impressed upon her the importance of not allowing anyone to find out about their talk and plans, lest they get in trouble. Moreover, when she noted her upcoming birthday, he asked whether it was to be her 15th. These and other interactions suggest that the defendant believed he was sending IM messages to a minor. The point for now, though, is that this evidence is far from conclusive, thus presumably inducing the government to rely heavily on Rule 404(b) evidence.

To speak in the terms of Rule 404(b), the government introduced this evidence to show knowledge and intent.

In reviewing the permissibility of the character evidence so introduced, we must distinguish between two sorts of infirmities. First, to the extent any evidence was admitted that goes to propensity, but not to the defendant's knowledge or intent, then such admission was in error. Second, even if evidence were introduced to show knowledge or intent, such admission was also improper if the prior act is not sufficiently similar, if the act's prejudicial effect substantially outweighs its probative value or if there is insufficient evidence to support a jury's finding that the defendant committed the similar act. We note from the outset that our review is for abuse of discretion. In the context of Rule 403, we have given "'special deference' to the district court's findings and reverse only when 'no reasonable person could take the view adopted by the trial court.'" *United States v. LeShore*, 543 F.3d 935, 939 (7th Cir. 2008) (quoting *United States v. Cash*, 394 F.3d 560, 564 (7th Cir. 2005)).

Despite this deferential review, we have determined that district courts abused their discretion in admitting "extremely prejudicial" Rule 404(b) evidence where that prejudicial effect is "far greater" than its probative value. *United States v. Heath*, 188 F.3d 916, 922-23 (7th Cir. 1999); *see also United States v. Johnson*, 584 F.3d 731, 738 (7th Cir. 2009). Importantly, we may also reverse if the district court failed to consider the prejudicial nature of the Rule 404(b) evidence before allowing it to be admitted. *See United States v. Macey*, 8 F.3d 462, 467 (7th Cir. 1993). Such

"perfunctory" analysis is insufficient. *See id.*; *see also United States v. Beasley*, 809 F.2d 1273, 1279 (7th Cir. 1987).

We find that the district court abused its discretion in failing to propound reasons for its conclusion that the probative value of SC's testimony, the many images of child pornography and the content of Ciesiolka's numerous, offensive IM conversations with third parties was not substantially outweighed by the risk of unfair prejudice. We have reviewed the transcript of the district court's Rule 404(b) hearing, but could find no portion within it where the court explained its bare-bones conclusion that "the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice."

The dissent finds fault with this conclusion. In doing so, it draws attention to one statement of the district court in advance of trial and to another made in response to the defendant's Fed. R. Crim. P. 33 motion for a new trial. Dissent at 25-27 n.1. But we have not, as the dissent suggests, "give[n] far too little weight to the district court's post-trial ruling." *Id.* at 27. Nothing in either of these statements by the district court makes reference to any form of prejudice to the defendant. While it is true that the district court elucidated to some degree the probative value of the Rule 404(b) evidence, the fact of evidence's being potentially probative does not imply—let alone ensure—that this quality is not substantially outweighed by the danger of unfair prejudice. There is no trace of an explanation as to this crucially important consideration—one that we require

district courts to make when admitting evidence under Rule 404(b). *See, e.g.*, *Macey*, 8 F.3d at 467 (observing that "all 404(b) evidence presents the danger that juries will equate the prior bad act with the crime charged, and convict the latter because of the former," emphasizing that "[n]owhere did the court consider the prejudicial nature of [the challenged] testimony," and finding error as a result). Here, the potentially prejudicial nature of the assorted, objectionable material was grossly enhanced by the time (a full day) required to present it.[3]

As noted, a trial court's "perfunctory" consideration of this critical question is inadequate and may in itself be grounds for reversal. We have also observed that "[a] flaw in the process is easier to detect than is a flaw in the result" when reviewing district-court rulings under Rule 404(b). *Beasley*, 809 F.2d at 1279. Here, we find a serious flaw in the process.

Our concern regarding the absence of any considered explanation is magnified by our belief that the cumulative impact of the Rule 404(b) evidence may have been unacceptably prejudicial vis-à-vis its probative value. We have previously explained that the Rule 403 standard incorporated in the requisite test for admitting evidence under Rule 404(b) has teeth. *See Beasley*, 809 F.2d at 1278-79. We

---

[3] We note that the Rule 404(b) evidence may have been circumstantially probative in various indirect ways of Ciesiolka's state of mind in communicating with the officer, but it was certainly prejudicial in broadly and deeply impugning his character.

have emphasized that "[a] rule that a judge may admit all evidence that the defendant committed crimes of similar varieties produces the gravest risk of offending the central prohibition of Rule 404(b): 'Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.'" *Id.* at 1278. We find just such a risk present in the instant case. The district court allowed mountains of Rule 404(b) evidence, much of which was highly prejudicial, to be introduced in a seemingly unconstrained way.

The jury's day-long exposure to voluminous evidence of Ciesiolka's prior bad acts, many of which were appalling, created a significant risk of prejudice. There is a real danger that such evidence, dumped without constraint into the record, can lead a jury to convict a defendant not on the basis of proof of the crime with which he has been charged, but for his simply being a bad person or for having committed unseemly acts in the past. *See Macey*, 8 F.3d at 467. The deluge of Rule 404(b) evidence, which ran the gamut from the jury's viewing over 100 images of child pornography to its hearing a woman's testimony of her having had sex with the defendant when she was 15 to the offensive sexual content of defendant's many IM conversations with unknown third parties, was certainly prejudicial and probably more prejudicial than probative. Whether it was *unfairly* prejudicial is a more difficult question in light of our highly deferential review of district courts' Rule 403 determinations, but we nevertheless feel compelled to reverse and remand based on the court's failure to explain its reasoning.

The prejudice could conceivably have been cured by appropriate limiting instructions. *See United States v. Jones*, 455 F.3d 800, 809 (7th Cir. 2006) (noting that such instructions "are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence") (quoting *United States v. Best*, 250 F.3d 1084, 1093 (7th Cir. 2001)). In the present case, during the admission of the Rule 404(b) evidence, the district court granted only one such instruction, which it gave to the jury in boiler-plate form at the start of the second day. The judge refused to provide any further instructions during the introduction of Rule 404(b) evidence, although repeatedly requested to do so. He did not explain why.

Given the extensive evidence of prior bad acts, introduced over an entire day and from multiple sources, and given the damning nature of that evidence, we are not confident that the court's pro forma limiting instruction sufficiently cured the error. *Cf. Johnson*, 584 F.3d at 737. *See generally United States v. Smith*, 308 F.3d 726, 739 (7th Cir. 2002) ("[J]urors are presumed to follow limiting and curative instructions unless the matter improperly before them is so powerfully incriminating that they cannot reasonably be expected to put it out of their minds."). We do not hold that it was necessarily an abuse of discretion for the district court to refuse to repeat its limiting instruction, though it surely would have ameliorated the situation had it done so. *Compare, e.g.*, *United States v. Butler*, 102 F.3d 1191, 1196-97 (11th Cir. 1997) *with United States v. Mounts*, 35 F.3d 1208,

1215 (7th Cir. 1994) (weighing the value of the "district court's careful and repeated instructions to the jury"). But we do find that, given the context-specific facts of this highly unusual case, the district court's failure to explain its decision to grant the government virtual *carte blanche* to introduce all the Rule 404(b) evidence that it did was an error that was not adequately cured by the limiting instruction provided.

For the purposes of remand, we do not suggest that none of the Rule 404(b) evidence introduced at trial was properly admissible. Instead, the district court should carefully analyze each piece of proposed Rule 404(b) evidence to satisfy itself that the requirements for admissibility are satisfied. Having done so, it should lay out its reasoning clearly for the record.

## III. CONCLUSION

For the foregoing reasons, we reverse the judgment and sentence of the district court and remand for a new trial. Our Circuit Rule 36 shall apply on remand.

REVERSED and REMANDED.

RIPPLE, *Circuit Judge*, dissenting. I agree with my colleagues that, under the particular facts and circumstances of this case, the so-called ostrich instruction should not have been given. We always have recognized that this instruction must be employed with great caution to avoid the possibility that a jury might convict a defendant on the basis of negligence rather than actual knowledge. *See United States v. Carrillo*, 435 F.3d 767, 781 (7th Cir. 2006). Accordingly, we have limited the use of the instruction to situations in which the defendant claims a lack of guilty knowledge and the Government produces a factual basis from which the jury might conclude that the defendant deliberately avoided the truth. The court's measured holding is correct. Under the facts of this case, the jury could not draw the inference that the defendant deliberately avoided the truth. The ostrich instruction was therefore improper. I join the opinion of the court in that limited respect. I note that we do not hold today that the instruction is always inappropriate in a sting operation; indeed, our case law recognizes that, in some circumstances, the instruction may be given in such a situation. *See United States v. Wilson*, 134 F.3d 855 (7th Cir. 1998); *United States v. Kaufmann*, 985 F.2d 884 (7th Cir. 1993).

With great respect for the contrary view of my colleagues, I do not believe that this misstep by the district court constitutes reversible error. The evidence of the defendant's guilt is strong––very strong. The transcripts of the conversations between Mr. Ciesiolka and "Ashley" gave the jury a very firm basis for concluding that Mr. Ciesiolka believed Ashley was a minor and never-

theless took substantial steps to induce her to engage in sexual activity. Moreover, unlike my colleagues, in assessing the strength of the Government's case, I am quite comfortable in giving full weight to the circumstantial, but nevertheless substantive, evidence of guilt supplied through the operation of Rule 404(b) of the Federal Rules of Evidence. All of this evidence was both relevant and probative of guilt. My reading of the record leaves me with the firm conviction, moreover, that the district court allowed the jury to consider the Rule 404(b) evidence only after extensive litigation of the issue and after careful judicial consideration.[1]

---

[1] During pretrial proceedings, the Government filed a notice of intent to use Rule 404(b) evidence at trial, *see* R.50, and Mr. Ciesiolka opposed the motion, *see* R.68. On February 25, 2008, the district court held a hearing to consider the motion, whereby the court scrutinized in detail the several pieces of Rule 404(b) evidence. The parties filed additional memoranda on the Rule 404(b) evidence issue, which the district court duly considered. *See* R.56, R.57, R.68.

Then, on February 26, 2008, before trial commenced, the district court verbally granted the Government's motion and ruled that the Rule 404(b) evidence would be admitted. The district court stated:

[T]he Court hereby finds admissible the three types of evidence set forth in [the] Government's 404(b), notice docket entry No. 50. The Government seeks to introduce evidence of defendant engaging in sexual conduct with a minor, SC, child pornography recovered from defendant's computer, and additional chats recovered

(continued...)

[1] (...continued)
from defendant's computer. The Court finds that all of this evidence is, one, directed toward establishing a matter and issue other than defendant's propensity to commit the crime charged; two, similar enough and close enough in time to be relevant to the matter at issue; three, there is sufficient evidence to support a finding by the jury that the defendant committed the similar acts, meaning the act occurred, and that the defendant was the actor; and, four, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. In this case, the similar acts evidence is probative of motive, intent, absence of mistake and knowledge, and is therefore admissible.

Tr. at 5-6, vol. I, Feb. 26, 2008.

After trial, Mr. Ciesiolka filed a Federal Rule of Criminal Procedure 33 motion for a new trial, whereby he challenged, *inter alia*, the district court's jury instructions concerning the Rule 404(b) evidence. *See* R.83. The district court denied the motion, providing additional explication of its ruling admitting the Rule 404(b) evidence, and making clear that further reflection had not altered its estimation of the admissibility of the evidence. *See* R.91 at 10. The district court stated:

[T]his Court believes that the child pornography found on Ciesiolka's computer was relevant to proving Ciesiolka's knowledge that "ashley12_km" [sic] was a minor and absence of mistake, because it shows that Ciesiolka had knowledge and that he did not mistakenly believe he was chatting with an adult—rather, he intentionally targeted an individual he believed was a

(continued...)

I cannot concur in my colleagues' estimation of the district court's explanation of its weighing of the benefits and burdens of admitting the Rule 404(b) evidence. More precisely, I cannot accept that there is "an absence of any considered explanation" of the Rule 404(b) evidence issue. *See* Op. at 20. In my view, the district court's verbal explanation, when combined with its explanation in its post-trial order, provides far more than an ample basis for appellate review. In this respect, I respectfully suggest that my colleagues give far too little weight to the district court's post-trial ruling. *See* Op. at 19-21.[2]

---

[1] (...continued)

> minor. As to the repeated rape of Jane Doe, this is also probative of Ciesiolka's knowledge and absence of mistake. In *United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006), the Seventh Circuit found that "[p]rior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children." Finally, evidence of additional Internet chats with other purported minors is probative of absence of mistake. It shows that Ciesiolka did not make a mistake in soliciting "ashley13_km," but rather that he had a pattern of targeting minors over the Internet, and that he knowingly solicited and enticed "ashley13_km."

*Id.*

[2] It is well-settled that a district court may explain its Rule 404(b) weighing after the Rule 404(b) evidence has been ad-

(continued...)

The court's decision today is in fundamental tension with our treatment of this issue in several recent 18 U.S.C. § 2422(b) cases in which, it appears, the explanations of the trial courts in admitting Rule 404(b) evidence were not as extensive as the one provided by the district court here. *See United States v. Zahursky*, 580 F.3d 515, 523-25 (7th Cir. 2009); *United States v. Hensley*, 574 F.3d 384, 389 (7th Cir. 2009). As *Zahursky* and *Hensley* explain, in § 2422(b) cases, a transcript of the conversation soliciting the minor is often before the jury; Rule 404(b) evidence is particularly well-suited to prove the defendant's intent and motive for what he says and does during those conversations.

Finally, it is worth noting, indeed emphasizing, that the district court provided a limiting instruction *twice*: during the day-long presentation of the evidence and again during the jury charge. These limiting instructions were materially identical to the instructions we approved

---

[2] (...continued)
mitted. *See United States v. Roe*, 210 F.3d 741, 745 (7th Cir. 2000) ("The district court's post-trial clarifying order gives us a sufficient basis for appellate review."); *see also United States v. Ulland*, 643 F.2d 537, 540 (8th Cir. 1981) (affirming the admission of Rule 404(b) evidence based on the district court's explanation of its weighing articulated in its post-trial order).

The court's implicit suggestion that the district court must explain its reason for admitting Rule 404(b) evidence prior to its admission is contrary to the case law. *See* Op. at 18 (citing *United States v. Macey*, 8 F.3d 462, 467 (7th Cir. 1993)). *Macey* does not purport to lay down any temporal rules.

in *Zahursky* and *Hensley*. We presume that the jury followed its instructions, and we should continue to treat Rule 404(b) limiting instructions as sufficient to eliminate any residual prejudice presented by such evidence.

For these reasons, I would affirm the judgment of the district court.